Fines A. HAGANS and Earnestine
Hagans, Appellants,

v.

Ed WOODRUFF dba Woodruff
& Associates, Appellee.

No. A14–91–00925–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

April 30, 1992.

David W. Showalter, Pamela P. Stines,
Daniel C. Conley, Bellaire, for appellants.

G. Morris Hamm, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and
SEARS and ELLIS, JJ.

## OPINION

ELLIS, Justice.

This is an appeal from a directed verdict granted in favor of appellee, Ed Woodruff d/b/a Woodruff & Associates, concerning the negligence claim of appellants, Fines A. Hagans and Earnestine Hagans, and judgment upon jury's verdict that appellants take nothing in their suit for deceptive trade practices pursuant to TEX.BUS. & COM. CODE ANN. § 17.41 et. seq. (Vernon 1986) (DTPA). The trial court, at the conclusion of the appellants' case, granted appellee's directed verdict as to appellants' claim of negligence. Appellee proceeded with his case and at the conclusion thereof, the trial court granted appellants' motion for directed verdict as to appellee's counterclaim that appellants brought suit in bad faith or for the purpose of harassment. The trial court then submitted the case to the jury on appellants' DTPA claim. The jury arrived at a verdict in favor of appellee and the trial court entered a take nothing judgment against appellants.

In 1989, appellants contacted appellee, a licensed Real Estate Broker, concerning a house they were interested in buying. Appellee showed appellants a house in the Woodgate subdivision which was listed with appellee. Appellee had been the property manager for this house for several months and had overseen several repairs on the property including, replacement of the carpet, sheetrock repair work, texturing and painting. Appellee made the following representations to appellants:

The house was a "good house," that "had been repainted," a "roof put on," "new carpet," "a good buy," "a good value," "built on a good foundation," a "sound foundation," in "a good neighborhood," "house had been inspected ... and wouldn't be any need to inspect it—reinspect it," that he had inspected it, "just a good house in a nice neighborhood."

The appellants decided to buy the house because it was a little different from the houses that they had seen and because they were told it was a good buy and in a nice neighborhood. Appellants made a bid of $57,900, based on appellee's recommendation that they would have to bid high in order to get the house. The bid was accepted by the Veterans Administration and appellants purchased the home.

After appellants moved into the home, they learned that there was a fault in the subdivision. Appellants noticed different levels in the street. Cracks in the street were replaced for more than a block, from half of appellants' yard to across the street. Also, some time after appellants moved in, they noticed separations in their home: between the entry door, in the den, in the upstairs door, in the garage door, the side door, air conditioning unit door and bedroom door.

Appellants filed suit against appellee alleging that appellee was negligent in performing his duties as a Realtor, specifically in appellee's marketing and representations concerning the property, and for violation of the Deceptive Trade Practices Act. Appellants sought damages for the permanent decrease in fair market value, mortgage interest associated with decrease in fair market value, repairs and mental anguish. At trial, Dr. Carl Norman, Associate Professor of Geology at University of Houston, testified that appellants' house is located near the break in the ground of an active geological fault known as the Woodgate Fault. He further testified that the property showed signs indicative of an active geological fault. Dr. Norman testified that he had lectured to groups of real estate brokers regarding geological faults in areas where they operate. He did not state an instance where he lectured to real estate brokers that operated specifically in the subdivision where appellants' property is located. In all cases where he gave talks before Realtors groups, the Realtors were aware that there were faults and simply wanted information such as how they could learn the exact location of the faults and find published materials on the faults.

Further, a real estate appraisal expert, Cary Coole, testified that the fault in the Woodgate subdivision affected its value and that the appellants' bid of $57,900 was an overstated value. Coole testified that

the value was actually in the range of $21,000 to $28,500. He further testified that real estate brokers should be aware of geological faults in subdivisions where they are selling houses, and stated that other Realtors in the Woodgate Subdivision were aware of the fault line prior to 1989. Coole was of the opinion that buyers rely upon real estate brokers as a source of information about properties.

Appellee testified that he did not know about the fault in the Woodgate Subdivision and, therefore, did not advise appellants regarding its presence. Appellee further stated that he did not tell appellants the house was a good buy, value or investment. The appellants' house was the second house appellee had sold in that subdivision. Appellee admitted that an active geological fault in close proximity to appellants' property would be a basic factor in evaluating the property's value, but had no personal knowledge regarding a possible fault until suit was filed against him.

After appellants and appellee presented their cases to the jury, the court directed verdict as to appellants' negligence claim and submitted the DTPA claim to the jury. Appellants proposed that the following jury charge be included:

#### Plaintiffs' proposed issues

QUESTION ___

Did the negligence, if any, of Ed Woodruff proximately cause the Hagans' damages, if any, in question?

"Negligence" means the failure to use ordinary care, that is failing to do that which a person of ordinary prudence would have done under the same or similar circumstances or doing that which a person of ordinary prudence would not have done under the same or similar circumstances.

"Ordinary care" means that the degree of care that would be used by a person of ordinary prudence under the same or similar circumstances.

"Proximate cause" means that cause which, in a natural and continuous sequence, produces an event, and without which cause such event, would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using *ordinary care* would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event.

Answer "Yes" or "No."

ANSWER: ___

Additional Instruction for Negligent Misrepresentation:

Negligence can also occur when one, who in the course of his business, profession, or employment, or in a transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communication the information. It is immaterial whether such misrepresentation was made by accident or intent, since it needs only to have been made and to have been false when made.

The court refused to instruct the jury on this issue and instead submitted questions only dealing with appellants' DTPA claim. The jury responded "no" to the following questions included in the charges:

#### Question No. 1

Did Ed Woodruff engage in any false, misleading, or deceptive act or practice that was a producing cause of damages to Fines and Earnestine Hagans?

"False, misleading, or deceptive act or practice" means any of the following:

a. representing that property has characteristics which it does not have;

b. representing that property is of a particular quality if it is of another;

c. knowingly making false or misleading statements of fact concerning the need for repair service;

d. representing that work or services have been performed on property when the work or services were not performed; or

e. the failure to disclose information concerning property that was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed.

"Producing cause" means an efficient, exciting, or contributing cause that, in a natural sequence, produced the damages, if any. There may be more than one producing cause.

Answer "Yes" or "No."

Answer: <u>No</u>

### Question No. 2

Did Ed Woodruff engage in any unconscionable action or course of action that was a producing cause of damages to Fines and Earnestine Hagans?

An "unconscionable action or course of action" is an act or practice that, to a person's detriment either:

a. takes advantage of the lack of knowledge, ability, experience, or capacity of a person to a grossly unfair degree; or

b. results in a gross disparity between value received and consideration paid in a transaction involving transfer of consideration.

"Producing cause" means an efficient, exciting, or contributing cause that, in a natural sequence, produced the damages, if any. There may be more than one producing cause.

Answer "Yes" or "No."

Answer: <u>No</u>

 In point of error one, appellants contend the trial court erred in refusing to submit appellants' proposed question to the jury regarding appellee's negligent misrepresentation. A trial court may only refuse to submit an issue if there is no evidence to warrant its submission. *Brown v. Goldstein,* 685 S.W.2d 640, 641 (Tex.1985). Therefore, we must determine, viewing the evidence in the light most favorable to the appellants and disregarding all contrary evidence and inferences, if there is any evidence of probative value which raises a material fact issue as to appellants' claim of negligent misrepresentation. *Kerrville HRH, Inc. v. City of Kerrville,* 803 S.W.2d 377, 383 (Tex.App.—San Antonio, 1990 writ denied).

In the present case, appellants claim that appellee, acting as a broker, had a duty to use reasonable care when he provided information to appellants regarding the house appellants wanted to buy. Specifically, appellants allege that appellee breached his duty to appellants when he allegedly encouraged them to buy the house at an inflated price in view of the fact that an existing fault line ran through the subdivision where the house was located. Appellants testified that appellee told them that the house was on a sound foundation in a good neighborhood and that there was no need to inspect the house, because the house had already been inspected. There was no evidence that damage to the foundation of the house existed at the time appellee made this representation. Appellants' main contention is that appellee should have been aware of a major fault line which ran through the subdivision where the house was located which effected the house's property value and could damage the house's foundation.

Appellants allege that several circumstances infer that appellee should have known about the fault line. First, appellants had sold a house in that subdivision before. Second, a geologist testified that an active geological fault was located near appellants' home, that the house showed signs indicative of an active fault and that he had lectured to real estate brokers about faults in the Houston area. Third, a real estate appraiser testified that brokers should know about faults in subdivisions where they are selling houses and that other Realtors in the Woodgate Subdivision knew about the fault prior to 1989. Fourth, appellants admitted that an active fault in close proximity to property would be an important factor in evaluating the property's value.

 A party seeking negligent misrepresentation must prove that (1) a represen-

tation is made by a defendant in the course of his business or in a transaction in which he has a pecuniary interest; (2) the defendant provides "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation. *See* RESTATEMENT (SECOND) OF TORTS sec. 552 (1977); *AmSav Group, Inc. v. American Sav. and Loan Ass'n of Brazoria County*, 796 S.W.2d 482, 488 (Tex.App.—Houston [14th Dist.] 1990, writ denied). One of the essential elements of this cause of action is that the defendant provide false information. Viewing the evidence in the light most favorable to appellants, it is still impossible to see what false information appellee provided. Appellee told appellants that the house was on a sound foundation. There is nothing to indicate in the record that there was damage to the foundation at the time appellee made that statement. Appellee told appellants the house was in a good neighborhood. This can hardly be perceived to be an all encompassing representation that no faults exist in the neighborhood. Further, appellants state that they bid an inflated value of $57,900 based on appellee's suggestion. Nevertheless, the record does not indicate that appellee suggested that specific amount, but that appellee suggested that they would have to bid high. Bidding high does not necessarily indicate a figure of $57,900.

■ Appellants' argument seems to be essentially that appellee should have known about the fault and communicated its existence to appellants in exercising reasonable care in his duty to appellants as a broker. Appellants cite no case law to support the proposition that an a broker has a duty to investigate for fault lines in a subdivision where he is selling property. We agree with the reasoning in *Kubinsky v. Van Zandt Realtors*, 811 S.W.2d 711, 715 (Tex.App.—Fort Worth, 1991 writ denied), that a broker has no legal duty to inspect listed property and disclose all facts which might materially affect its value or desirability. There is no law in Texas sup-

porting the imposition of such a duty and we agree with *Kubinsky* that the imposition of this type liability should be left to the Texas legislature. *Id*.

■ Further, even if there was error in failing to submit the issue on negligent misrepresentation, the error did not amount to reversible error. The controlling issue in appellants' claim for negligent misrepresentation was whether appellants provided any false or misleading information. Question number 1 of the trial court's charge to the jury asked whether appellee engaged in any "false, misleading, or deceptive act or practice" which was defined in five separate ways including "representation that property has characteristics which it does not have." This definition does not require that the representation must be knowing, or intentional. It only requires that it be false. That is precisely what would be required under the elements of negligent misrepresentation. Without this controlling element, there could be no cause of action for negligent misrepresentation. The jury's response to this charge affirmatively shows that they did not find from a preponderance of the evidence that appellee made any misrepresentations. Therefore, even if there was error in failing to submit the appellants' suggested charge on negligent representation, such error does not amount to reversible harm. *See Island Rec. Dev. v. Republic of Texas Sav.*, 710 S.W.2d 551 (Tex. 1986) (harmless error analysis to charge excluded by broad form submission); TEX. R.APP.P. 81(b)(1) ("no judgment shall be reversed on appeal … unless the … error complained of amounted to such a denial of the rights of the appellants as was reasonably calculated to cause and probably did cause rendition of an improper judgment in the case, or was such as probably prevented the appellants from making a proper presentation of the case"). Appellants' point of error one is overruled.

■ In point of error two, appellants contends the trial court erred in granting appellee's motion for directed verdict on appellants' claim of negligence. In review-

ing a directed verdict, an appellate court "must view the evidence in the light most favorable to the party against whom the verdict was rendered and disregard all contrary evidence and inferences." *Qantel Business Systems, Inc. v. Custom Control Co.*, 761 S.W.2d 302, 303 (Tex.1988) (citing *White v. Southwestern Bell Tel. Co.*, 651 S.W.2d 260, 262 (Tex.1983); *Collora v. Navarro*, 574 S.W.2d 65, 68 (Tex.1978)). If there is any evidence of probative value which raises a material fact issue, then the judgment must be reversed and the case remanded for the jury's determination of that issue. *Id.* at 304 (citations omitted).

Essentially, appellants reiterate their argument in point of error one that appellee was negligent in his marketing and selling of appellants' home, because he failed to investigate the subdivision for fault lines which might effect the house and induced appellants to bid an inflated value for the house. As stated in our review of point of error one, we find no evidence of material fact to raise an issue of negligence based on these arguments. Appellants' point of error two is overruled.

Accordingly, the judgment of the trial court is affirmed.