Carla **STEPTOE**, Appellant,

v.

Merrill **TRUE**, Individually and d/b/a Coldwell Banker Vista Realty and Galveston County Investments, Inc., d/b/a Coldwell Banker Vista Realty, Appellees.

No. 14–99–00618–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 18, 2001.

---

[3] Of course this would be without prejudice to Profile's rights, if any, to cancel the contracts in the future.

214

John S. Morgan, Beaumont, for appellants.

John P. Cahill Jr., Houston, Traci B. Craft, Crystal Beach, for appellees.

Panel consists of Justices MAURICE E. AMIDEI, WITTIG, and FROST.*

**OPINION**

MAURICE E. AMIDEI, Justice.

Appellant, Carla Steptoe, sued, among others, the appellees, Merrill True

* Former Justice Maurice Amidei sitting by as-      signment.

in his individual and representative capacities and Galveston County Investments, Inc., d/b/a Coldwell Banker Vista Realty, claiming, in connection with her purchase of some beachfront property, violations of the Texas Deceptive Trade Practices Act ("the DTPA claim"), fraudulent inducement, negligence, negligent misrepresentation, and breach of contract.[1] After adequate time for discovery, the trial court granted appellees' motion for summary judgment. In one point of error, she argues that the trial court erred because material fact issues exist which preclude summary judgment. We affirm.

## I. Background

This lawsuit arises out of True's alleged misrepresentations and non-disclosures to Steptoe and her common law husband, Malcolm Deas, in connection with Steptoe's purchase of a beach house in Gilchrist, Galveston County, Texas, in late 1996.[2] Prior to closing, a concrete bulkhead[3] was on the beachfront side of the property, seaward of the vegetation line,[4] i.e., between the vegetation and the waterline. The purpose of bulkheads such as these is to prevent beach erosion and, ultimately, to prevent the subsidence of improvements by maintaining the underlying foundation upon which they have been built. Appellant was vacationing in the Galveston area when she decided that she wanted to purchase a beach house. After returning home, she and her husband located Coldwell Banker's website on the Internet and sent an e-mail inquiring about real estate in the area. As a result of that e-mail, Steptoe and Deas were eventually put in contact with Merrill True.

Steptoe and Deas discussed the house with True and Ed Bell, the listing agent for the Bos property, over several days. During one of these meetings, Bell allegedly told Steptoe or Deas that the bulkhead for this property had been grandfathered by the State. Bell also allegedly told one of them how Bos had added concrete to the bulkhead over the years to replace the rip-rap that had washed away. Based on these conversations, appellant claims she was led to believe that the bulkhead was there to stay. Steptoe decided to purchase the house and, in contemplation of doing just that, she and Deas rented the house for five days just prior to signing the earnest money contract.

Shortly after they rented the house, True, in preparation for closing, transmitted two addenda to the earnest money contract which are particularly relevant to this lawsuit, one entitled "Notice Regarding Coastal Area Property" ("the Coastal Property Addendum") and the other entitled "Addendum for Property Located Seaward of the Gulf Intracoastal Waterway" ("the Bulkhead Addendum"). Essentially, the Coastal Property Addendum disclosed that the property line on the seaward side of the house was determined by the vegetation line. Consequently, because the vegetation line could shift, beachfront owners are required to be in-

1. Because Steptoe does not attribute to Galveston County Investments, Inc. d/b/a Coldwell Banker Vista Realty any statement not otherwise made by True, for purposes of simplicity, we refer only to True. Additionally, appellant has waived her argument that the trial court improperly granted summary judgment on her breach of contract cause of action by failing to provide this Court with any briefing on that issue. *See* Tex.R.App.P. 38.1, 38.2; *see also Smith v. Tilton,* 3 S.W.3d 77, 84 (Tex.App.—Dallas 1999, no pet.).

2. Deas's conversations with True are certainly relevant to this action, but he did not sign the contract and is not a party to this action.

3. Bulkheads are concrete structures, designed to prevent beach erosion. This particular bulkhead was made of so-called "rip-rap," or pieces of concrete left behind after road construction, over which Lydia Bos, the former owner of the property, allegedly poured new concrete to ensure its stability.

4. The vegetation line is a shifting property line on the beach that marks the boundary between an individual's land and State-owned lands.

formed that their seaside property lines are subject to increases or decreases, as measured by that vegetation line. The Bulkhead Addendum read, in relevant part:

> State law prohibits any obstruction, barrier, restraint, or interference with the use of the public easement, including the placement of structures seaward of the landward boundary of the easement. STRUCTURES ERECTED SEAWARD OF THE VEGETATION LINE (OR OTHER APPLICABLE EASEMENT BOUNDARY) *OR THAT BECOME SEAWARD OF THE VEGETATION LINE* AS A RESULT OF NATURAL PROCESSES ARE SUBJECT TO A LAWSUIT BY THE STATE OF TEXAS TO REMOVE THE STRUCTURES. (Emphasis added.)

Steptoe signed the addenda at her home in Mississippi and then traveled to Gilchrist to proceed with closing. At some point after Steptoe had taken possession of the residence as its owner, the State of Texas notified her of its intent to have the bulkhead removed. The record further reflects that the State had notified Bos of its intent to have the bulkhead removed. That notwithstanding, Steptoe and Deas deny anyone ever told them of the State's plan with regard to the bulkhead. In any event, Steptoe consented to the removal of the bulkhead, and after its removal, the beach continued to erode until such time as the house eventually subsided into the Gulf of Mexico.[5]

In August of the following year, appellant filed suit against the two appellees, in addition to Bos, and Ed Bell, individually and doing business as Harvell Realty. Bos, Bell, and Harvell Realty are not parties to this appeal. After a year and a half

of litigation, appellees filed a motion for summary judgment, which the trial court granted. Appellees then moved to sever their action from the claims against the remaining defendants so that a final judgment could be rendered and this appeal brought.

## II. Discussion

The standard of review following a grant of summary judgment is well-established. The movant has the burden of proving that there is no genuine issue of material fact and that it is entitled to judgment as a mater of law. *Nixon v. Mr. Property Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). In deciding the first of these issues, evidence favorable to the non-movant is taken as true, indulging every reasonable inference that could be drawn from the evidence and resolving any doubts as to the same in favor of the non-movant. *Id.* In order to be entitled to summary judgment, the movant must disprove at least one element essential to each pleaded cause of action or otherwise show that plaintiff could not succeed on any theory pleaded. *Ervin v. James*, 874 S.W.2d 713, 715 (Tex.App.—Houston [14th Dist.] 1994, writ denied) (*citing Rosas v. Buddies Food Store*, 518 S.W.2d 534, 537 (Tex.1975)). Alternatively, the movant must conclusively establish all elements of an affirmative defense to each claim. *Science Spectrum, Inc. v.. Martinez*, 941 S.W.2d 910, 911 (Tex.1997). Here, appellees' based their motion for summary judgment on the theory that appellant had failed to establish an essential element of each cause pleaded, *viz.*, that she failed to establish appellees owed her a duty.

### A. The DTPA and Fraud Claims

Appellant's DTPA claim is based upon her reliance on an allegedly inade-

---

5. This fact is not in the record because the house did not subside into the Gulf until after the court below granted summary judgment in favor of appellees. Although it is improper for a party to rely on facts outside the record in support of its argument, *see, e.g., Melendez v. Exxon Corp.*, 998 S.W.2d 266, 280 (Tex.

App.—Houston [14th Dist.] 1999, no pet.) (holding parties are to confine their arguments and factual recitations to matters contained in the record), this fact is historical only and relevant only to appellant's damages, an issue not before this court.

quate description of the property given to her by True and certain alleged misrepresentations made by him concerning the bulkhead. Specifically, she complains that True led her to believe that the bulkhead was a permanent structure. Alternatively, she argues that, by providing her with the Bulkhead Addendum, a reasonable inference arises that True knew the bulkhead was illegal and subject to removal by the State. From this, appellant argues that affirming the trial court's grant of True's summary judgment would be "extreme" because it "would lead to persons being exempt from liability by any *deliberate* failure to disclose material information which that person is under a duty to disclose." (Emphasis our own.) But appellant's argument assumes the consequent. That is, whether True is liable necessarily turns on whether he was under a duty to disclose that the bulkhead was subject to removal beyond merely giving Steptoe the statutorily required addenda.

■ A DTPA misrepresentation usually requires an affirmative representation, although sometimes the failure to disclose may be actionable. TEX.BUS. & COM.CODE ANN. § 17.46(b)(23) (Vernon 1999); *see also Weitzel v. Barnes*, 691 S.W.2d 598, 601 (Tex.1985) ("[I]t is conceivable that in certain situations silence could amount to a misrepresentation."). The gravamen of an allegation of fraud, on the other hand, is deception coupled with an intent to deceive. *Blue Bell v. Peat, Marwick, Mitchell & Co.*, 715 S.W.2d 408, 415 (Tex.App.— Dallas 1986, writ ref'd n.r.e.).

### 1. Affirmative Misrepresentation

Viewing the evidence in the light most favorable to appellant, as we must, we find that, based upon appellant's own deposition testimony, no reasonable jury could conclude that True made any affirmative misrepresentation to appellant concerning the bulkhead. In her one and only conversation with True before Bos accepted her earnest money contract, Steptoe testified that she asked True whether there was a problem with beach erosion. According to her testimony, True responded by saying he "didn't really know ... but in Crystal Beach there was not." According to the record, True lived in Crystal Beach, which is about fifteen to eighteen miles away from Gilchrist. There is nothing in the record to suggest that this statement was false and, if so, whether it was relevant to beach erosion in Gilchrist. Steptoe further testified that True never had a conversation with her about the bulkhead. We hold that True's answer to Steptoe cannot be viewed as an affirmative misrepresentation.[6]

■ Deas, however, testified to additional conversations he had with True. Specifically, Deas testified that True told him that bulkheads are "nice to have." He further testified that, although True never told him that bulkheads were a "selling feature," the same was obvious to Deas. We hold that Deas's subjective belief that bulkheads help sell homes cannot, as a matter of law, be transformed into an affirmative misrepresentation by True. We further hold that the only other statement attributable to True—that bulkheads are nice to have—is likewise not an affirmative

6. This is particularly so when the evidence, viewed in the light most favorable to Steptoe, is taken together. It was Bell, not True, who told Steptoe and Deas that the bulkhead had been grandfathered and that Bos had poured additional concrete over it as the years had passed. While appellant does not allege that somehow Bell's statements are imputed to True, counsel for appellant, in both appellant's brief and at oral argument, several times misstated the record in arguing that these and other statements were actually made by True. Moreover, True was not present during this conversation and no one testified that True later learned what Bell told Steptoe and Deas in this regard. *See, e.g.,* TEX.REV.CIV.STAT.ANN. art 6573a, § 15F (Vernon Supp.2000) (providing that parties and real estate licensees are liable only for their own misrepresentations, and not for the misrepresentations of those they represent or those that represent them, unless they knew of the falsity and failed disclose it).

misrepresentation as a matter of law. In cases like these, "[t]he decisive test ... is whether the seller asserts a fact of which the buyer is ignorant or merely states an opinion or judgment on a matter of which the seller has no special knowledge *and* on which the buyer may be expected also to have an opinion and to exercise his judgment." *Autohaus, Inc. v. Aguilar,* 794 S.W.2d 459, 463 (Tex.App.—Dallas 1990), *writ denied,* 800 S.W.2d 853 (Tex.1991) (per curiam) (emphasis added and citations omitted).[7] Deas could and, as demonstrated by his testimony, did hold an opinion about the nature and quality of the bulkhead. And there is nothing in the record to suggest this statement did anything other than point out the obvious. Clearly, if, as Deas testified, it is obvious that bulkheads are a selling feature, then it necessarily follows that they would be nice to have. This brings us to whether True concealed knowledge in light of his statement that bulkheads are nice to have.

### 2. Misrepresentation by Omission

■ In support of her argument that a DTPA claim exists where one fails to disclose a material fact, appellant cites to an opinion from a federal district court. *Washington v. United States Dep't of Hous. & Urban Dev.,* 953 F.Supp. 762 (N.D.Texas 1996). In that case, however, the court held that the DTPA "requires that the defendant have known the information and have failed to bring it to the plaintiff's attention." *Id.* at 777 (*citing Doe v. Boys Clubs of Greater Dallas, Inc.,* 907 S.W.2d 472, 479 (Tex.1995)). The *Washington* court also recited the well-established rule that, in Texas, a defendant "has *no duty* to disclose material facts [of which] it should have known." *Id.* (emphasis added); *see also Doe,* 907 S.W.2d at

479 and *Prudential Ins. Co. v. Jefferson Assoc., Ltd.,* 896 S.W.2d 156, 164 (Tex. 1995).

Appellant seeks to avoid this result by arguing that an inference arises that True knew the bulkhead was illegal and subject to removal based upon his providing to Steptoe the Coastal Property and Bulkhead Addenda. Before turning to the law, we note that nothing in either document purports to convey information concerning the illegality of the bulkhead. In fact, appellant has not even argued that it was removed *because* it was illegal. Rather, it was removed because, as disclosed on both the Coastal Property and Bulkhead Addenda, the vegetation line was subject to change due to tidal influences, and structures that are or become seaward of that boundary are subject to removal by the State. In other words, the bulkhead was removed because it was on State property.

Moreover, the undisputed testimony indicates that the bulkhead was always on the seaward side of the vegetation line, *i.e.,* that it was always on the State's side of the shifting property line. Not only is it unreasonable as a matter of law to believe one has a right to control the condition of property not their own absent a special agreement, such as an easement or covenant, but there is nothing in the record to suggest that True knew the bulkhead was actually going to be removed, as Bos apparently did.[8] And providing Steptoe with the statutorily required addenda in no way imputes that knowledge, primarily because neither document suggests that the State will actually assert its right.

Accordingly, we hold that the trial court did not err in granting summary judgment on appellant's DTPA and fraud claims

---

7. Although this language was originally found in a breach of warranty case, it is equally applicable here. In a breach of warranty case, the key, in the first instance, is what was warranted, *i.e.,* what did the seller tell the buyer. Likewise, in a DTPA or fraud case, the starting point is what did the defendant say to the plaintiff.

8. Steptoe testified that True told her that he had never met Bos, and there is nothing in the record to reflect that this is false or that, even if it were false, Bos had told him about the State's plan to remove the bulkhead.

against True. Moreover, even if we could somehow contort True's statement that' bulkheads are "nice to have" into a misrepresentation, as a matter of law, we find that appellant could not have reasonably relied on such a statement in view of the plain fact that the bulkhead was not part of her property.

## B. The Negligence Causes of Action[9]

■ In addition to the foregoing claims, Steptoe brought an action against True for negligence and negligent misrepresentation. For the reasons we have discussed above, we hold that Steptoe's claim for negligent misrepresentation must fail, *viz.*, because True made no actionable misrepresentation in connection with the sale of the property. Indeed, he made no representation whatsoever, according to the testimony of Steptoe and Deas, other than his statement to Deas that bulkheads are nice to have.[10]

■ In order to prove negligent misrepresentation, Steptoe must, as a threshold matter, prove that True owed her a duty. Second, she must show he actually provided her with false information. *Hagans v. Woodruff,* 830 S.W.2d 732, 736 (Tex.App.— Houston [14th Dist.] 1992, no writ). At summary judgment, True argued that he owed no duty to disclose facts about the bulkhead which were unknown to him. We agree. In *Hagans,* we held that "a broker has no legal duty to inspect listed property and disclose all facts which might materially affect its value or desirability. There is no law in Texas supporting the imposition of such a duty and we agree with *Kubinsky* that the imposition of this

type [of] liability should be left to the Texas legislature." *Id.* (*citing Kubinsky v. Van Zandt Realtors,* 811 S.W.2d 711, 715 (Tex.App.—Fort Worth 1991, writ denied)). We see no reason now why we should depart from the reasoning underlying our holding in *Hagans.*

Indeed, in that case, the facts are even more compelling than they are here. Woodruff, a broker, told Hagans that there was no need to have the house inspected because it had just been inspected, and he told Hagans that "the house was a good house on a good foundation." *Id.* at 736. In fact, a fault line existed beneath the surface, of which Woodruff was apparently unaware. Even so, Hagans produced an expert who testified that the fault was known to geologists prior to the sale, that the expert had lectured to realtors about its existence, and that other realtors who sold in the subdivision knew of that fault prior to the time that the house was sold. *Id.* Here, Steptoe argues that, because the "defect" in this case was patent, *Hagans* is inapposite. We disagree. At bottom, *Hagans* stands for the proposition that a realtor has no duty to inspect, even if such inspection would have uncovered facts that would materially affect the value of the property. Moreover, although the bulkhead itself was obvious, the fact that the State of Texas planned to exercise its right to remove it was not, at least not to persons not privy to the notices allegedly sent by the State to Bos. Furthermore, the duty Steptoe would have us impose is either that True should have stated the obvious, *i.e.,* that a structure not on her property may be removed by the owner on whose property the structure is

---

9. Although couched in language of ordinary negligence, it is clear from the context of appellant's brief that this point of error concerns the representations made by True. Accordingly, we find that appellant has waived her "negligence" point of error to the extent it is not based on a misrepresentation. Tex. R.App.P. 38.1, 38.2; *see also Smith,* 3 S.W.3d at 84. Nevertheless, in the interests of justice, we will explain why a garden-variety negligence claim must also fail.

10. Because we find that True did not make any affirmative misrepresentations, this *is* a case where the rule charging one with a duty to read what he signs precludes him from relief for any mistake resulting from his failure to do so. *Cf. Plains Cotton Co-op. Ass'n v. Wolf,* 553 S.W.2d 800 (Tex.App.—Amarillo 1977, writ ref'd n.r.e.) (holding that rule does not apply where defendant made false representations).

situated, or alternatively, that it was True's duty to contact the State to determine whether the State intended to exercise its right to remove the structure. In *Hagans*, we specifically noted that this was a legislative prerogative, and the Legislature, in the nearly eight years since *Hagans*, has chosen not to impose such a duty. Finally, as was the case in *Hagans*, there is no evidence suggesting that True provided appellant with any information which later turned out to be false.

Moreover, the case upon which *Hagans* relied held that where an inspection was performed, there was no duty on the part of the seller's agents to disclose to the buyer foundational problems with the home, even though the agents had received a copy of the inspection disclosing such problems. *Kubinsky*, 811 S.W.2d at 714–15. While an inspection would not have uncovered the problem with the bulkhead in this case (because it was not something on the property subject to an inspection), *Kubinsky* is instructive because it lends further support for the conclusion that True's presentation of the Bulkhead Addendum did not create a duty to explain it. Similarly, although the earnest money contract did call for a survey to be completed for Steptoe's benefit, True was not obligated to inform her of what that survey may have revealed,[11] *i.e.*, whether the bulkhead was a part of the property and whether it could be removed by the State.

Accordingly, the decision of the trial court is affirmed.

---

11. The survey is not part of the appellate record.