Affirmed and Opinion filed February 19, 2004









Affirmed
and Opinion filed February 19, 2004.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-03-00221-CV

____________

 

MICHAEL J. SHERMAN
AND LORI A. SHERMAN, Appellants

 

V.

 

RICHARD ELKOWITZ,
INDIVIDUALLY, AND HOUSTON SHELTER CORPORATION D/B/A RE/MAX WESTSIDE REALTORS, Appellees

 



 

On Appeal from the 400th
District Court

Fort Bend County, Texas

Trial Court Cause No. 113,770

 



 

O P I N I O N








In this case we address whether the
listing agent and realty company for the seller of a home could be liable for
alleged misrepresentations and nondisclosures in a disclosure notice required
by the legislature.   Michael J. Sherman
and Lori A. Sherman, the purchasers, contend that Richard Elkowitz and Houston
Shelter Corporation d/b/a Re/Max Westside Realtors failed to disclose in the
notice that the sellers once sued the previous owner for failing to disclose
defects in the homeCthe same defects the Shermans say they
discovered only after they purchased it. 
The Shermans appeal from a directed verdict in favor of Elkowitz and
Re/Max.  We affirm, because Elkowitz and
Re/Max did not misrepresent, or fail to disclose, anything concerning the
condition of the home and because the prior lawsuit was not required to be
disclosed.

I.        FACTUAL AND PROCEDURAL BACKGROUND

On May 27, 1998, the Shermans purchased a
home located at 2214 Country Creek Way, Richmond, Texas, from Patrick and Amy
Shields.  Elkowitz, a realtor employed
with Re/Max, acted as listing agent for the Shields and assisted them with the
sale of the property to the Shermans. 
Before the sale, the Shields, with Elkowitz=s assistance,
completed and provided to the Shermans a Seller=s Disclosure
Notice, in which the Shields represented their knowledge of the features and
condition of the property.  In the
notice, the Shermans identified cracks in the driveway as a known defect
needing repair, and also disclosed a treatment for termites in 1990.  The Shermans, represented by their real
estate agent, Mike Stavinoha, had the property inspected before agreeing to the
purchase.

Some time after moving in, the Shermans
discovered various defects in the property, and they eventually learned that,
in 1994, the Shields had sued the previous owner for failing to disclose,
allegedly, the same defects the Shermans discovered.  Neither the alleged defects nor the lawsuit
had been disclosed in the Seller=s Disclosure
Notice.  








In May of 2000, the Shermans brought suit
against Patrick and Amy Shields, Elkowitz, and Re/Max for statutory[1]
and common-law fraud, violations of numerous provisions of the Texas Deceptive
Trade Practices-Consumer Protection Act (ADTPA@),[2]
negligence,[3]
and gross negligence; they claimed the Shields and Elkowitz were required to
disclose the alleged defects and the earlier lawsuit.  The case was tried to a jury over several
days in July of 2002.  At the close of
the Shermans= case, the trial court granted Elkowitz
and Re/Max a directed verdict, but refused to grant a directed verdict for the
Shields.  At the conclusion of the trial,
the Shermans obtained a favorable judgment against the Shields.  This appeal of the directed verdict for
Elkowitz and Re/Max followed.  

II.       DISCUSSION
AND ANALYSIS

A.      Appellants= Issue

In their sole issue, the Shermans claim
they raised fact issues on each of their claims which revolved around alleged
misrepresentationCincluding nondisclosureCin the Seller=s Disclosure
Notice.  The Shermans contend that they
relied on the notice, and had these things been disclosed, they would not have
bought the property.  

B.      Standard of Review

A directed
verdict is proper in the following circumstances: (1) a defect in the opponent=s pleadings makes the pleadings insufficient to
support a judgment; (2) the evidence conclusively proves a fact that
establishes a party=s right to judgment as a matter of law; or (3) the
evidence offered on a cause of action is insufficient to raise an issue of
fact.  Kline v. O=Quinn, 874
S.W.2d 776, 785 (Tex. App.CHouston [14th Dist.] 1994, writ denied).  When reviewing the granting of a directed
verdict on an evidentiary basis, we must decide whether there is any evidence
of probative value to raise an issue of fact on the material questions
presented.  Qantel Bus. Sys., Inc. v.
Custom Controls Co., 761 S.W.2d 302, 304 (Tex. 1988).  If there is any conflicting evidence of
probative value on any theory of recovery, a directed verdict is improper and
the case must be reversed and remanded for the jury=s determination of that issue.  Szczepanik v. First S. Trust Co., 883
S.W.2d 648, 649 (Tex. 1994).  We must Aconsider all the evidence in a light most favorable to
the party against whom the verdict was instructed, disregarding all contrary
evidence and inferences, [and] give the losing party the benefit of all
reasonable inferences created by the evidence.@  Id.








C.      The Trial Court did not Err in Granting a
Directed Verdict on Appellants= Claims

We turn now to the Shermans= issue.  They do not claim Elkowitz and Re/Max made
verbal representations to them; rather, the misrepresentations on which they
rely are in the Seller=s Disclosure Notice[4]
and relate to two discrete problems: the alleged misrepresentation and
concealment of defects, and the alleged misrepresentation and concealment of
the earlier lawsuit.

1.       No
Evidence Showed Appellees Misrepresented the Property or Concealed Defects.

We first consider alleged defects that
were either misrepresented or concealed in the Seller=s Disclosure.[5]  Under section 5.008 of the Texas Property
Code, a seller of certain residential real property is required to give the
purchaser of the property a written noticeCthe ASeller=s Disclosure
Notice@Cwhich requires the
seller to disclose his knowledge of the condition of the property.  See Tex.
Prop. Code ' 5.008(a). 
This notice must be in the form prescribed in the statute, or in a form
that is Asubstantially
similar@ to the prescribed
notice.  Id. ' 5.008(b).  








The three-page notice Elkowitz provided
was printed by the Texas Association of Realtors, and appears to be
substantially similar to the form of the notice in Property Code section
5.008.  The first page of the notice provides
that it is to be Acompleted by the Seller,@ and, just below
the space for the property address, in all capital letters, appears the
following disclaimer:

THIS NOTICE IS A
DISCLOSURE OF SELLER=S KNOWLEDGE OF THE CONDITION OF THE
PROPERTY AS OF THE DATE SIGNED BY SELLER AND IS NOT A SUBSTITUTE FOR ANY
INSPECTIONS OR WARRANTIES THE PURCHASER MAY WISH TO OBTAIN.  IT IS NOT A WARRANTY OF ANY KIND BY SELLER,
SELLER=S AGENTS, OR ANY
OTHER AGENT.

The questions that follow are each directed to Ayou (Seller),@ and inquire into
the property=s features, conditions, defects, repairs
needed, and certain previous conditions and repairs.  And, as discussed in greater detail in the
next section, the notice also requires the disclosure of lawsuits Adirectly or
indirectly affecting the property.@  Below the signature lines for the sellers is
the following notice:

NOTICE TO PURCHASER: Listing
Broker, _________, and Other Broker, _________, advise you that this Seller=s Disclosure
Notice was completed by Seller, as of the date signed.  The Listing Broker and Other Broker have
relied on this notice as true and 
correct and have no reason to believe it to be false or inaccurate.  This notice is not a warranty of any kind by
Seller, Seller=s Agents or any other Agent.  YOU ARE ENCOURAGED TO HAVE AN INSPECTOR OF
YOUR CHOICE INSPECT THE PROPERTY PRIOR TO CLOSING.  

The signature
lines for the purchasers follow at the bottom of the last page.[6]  








The Shermans place
great emphasis on the language in the ANotice to
Purchaser@ section that AListing Broker and
Other Broker have relied on this notice as true and correct and have no
reason to believe it to be false or inaccurate@ (emphasis
added).  However, the Shermans direct us
to no authority for the proposition that, by signing in the spaces provided,
real estate brokers somehow adopt as their own the representations of the
seller.  Indeed, the notice makes clear
that it is a disclosure by the seller only, not the seller and the
broker.  Twice the disclosure notice
warns that no warranties are made by the seller, the seller=s agents, or other
agents, and even the sentence the Shermans emphasize warns that the brokers Ahave relied@ on the
information provided by the seller.  At
best, the only representation Elkowitz and Re/Max made in acknowledging the
notice was that they Ahave no reason to believe [the disclosure
notice] to be false or inaccurate.@  

This statementCthat the broker
has no reason to believe that the seller=s disclosures are
false or inaccurateCis not an affirmative representation by
the broker of the condition of the property. 
It is a statement of the broker=s knowledge
concerning the seller=s disclosures.  Consequently, the broker would have a duty to
come forward only if he had any reason to believe that the seller=s disclosures were
false or inaccurate, and the only way he could be held liable for his statement
in the notice is if it were shown to be untrue. 
Cf. Kubinsky
v. Van Zandt Realtors,
811 S.W.2d 711, 714 (Tex. App.CFort Worth 1991, writ denied) (holding that listing real
estate agent has no legal duty to inspect listed property for defects over and
above asking the sellers if such defects exist).  Therefore, we must determine whether the
Shermans presented any evidence to raise a fact issue as to appellees= knowledge of
defects. 








Appellants point
to the following evidence: (1) Elkowitz knew of the earlier lawsuit involving
defects in the property and knew that the Shields did not receive enough money
from the lawsuit to cover the cost of repairs; (2) Elkowitz was named in the
earlier lawsuit as a person with knowledge of relevant facts; (3) the Shermans= expert engineer
testified that there was an apparent attempt to conceal existing wood rot with
painted fascia board; and (4) Elkowitz himself testified that he was obligated
to disclose Aall matters relating to the property.@  The Shermans argue that this evidence shows
that Elkowitz knew of the defects alleged in the earlier lawsuit, and
participated with the Shields in misrepresenting and failing to disclose the
defects in the property in the disclosure notice.  However, reviewing this evidence in the light
most favorable to the Shermans, we find no evidence that Elkowitz had any
reason to believe the information provided by the Shields was false or
inaccurate regarding defects in the property.[7]  

The Shermans place
greatest emphasis on the conversation between Amy Shields and Elkowitz about
disclosing the earlier lawsuit in the Seller=s Disclosure
Notice.  Amy Shields testified that she
filled out the disclosure notice, and Elkowitz assisted her to the extent she
had questions about the information requested. 
When asked what Elkowitz said in response to her question whether the
earlier lawsuit should be disclosed, Amy Shields testified as follows: AYes, I asked if we
needed to disclose the prior lawsuit, and Mr. Elkowitz asked me if we had
repaired everything, and I said yes everything but the driveway, and he said,
you just need to disclose the driveway.@  This testimony, while showing that Elkowitz knew
of the existence of the earlier lawsuit concerning the condition of the home,
is no evidence that Elkowitz knew or was ever informed of the relevant
specifics of that lawsuit, nor does it raise a fact issue that he had knowledge
of any defects alleged in this lawsuit.  








Next, the Shermans
point to Amy Shields=s testimony that Elkowitz was aware that
the settlement the Shields received in the earlier lawsuit was not enough to
cover the cost of repairs.[8]  That testimony, however, does not raise a
fact issue that Elkowitz knew there were existing defects.  Mrs. Shields= testimony was
that she told Elkowitz that all defects had been repaired except for the
driveway, which was disclosed, and there is no evidence that Elkowitz was ever
informed otherwise.  As at least one
court has noted, Arepairs correct defects, not prove their
continued existence.@  Pfeiffer v. Ebby Halliday Real
Estate, Inc., 747
S.W.2d 887, 890 (Tex. App.CDallas 1988, no writ). 
And, to the extent the Shermans complain that appellees failed to
disclose prior repairs, the testimony indicates that Elkowitz knew repairs were
made, but there is nothing in the testimony to raise a fact issue that
appellees knew of repairs that should have been disclosed in the notice.

As additional
support for their argument, the Shermans point out that Elkowitz was listed in
the earlier lawsuit by the Shields as a person with knowledge of relevant
facts.  However, by itself, this does not
raise a fact issue as to his knowledge of specific defects or unfinished
repairs; the record contains no evidence as to what Arelevant knowledge@ he might have
had.  Further, while the expert testimony
of the Sherman=s engineer may have supported a finding
that the Shields concealed a defective condition, it does not in any way
implicate Elkowitz.  In fact, Patrick
Shields admitted that he was not contending that Elkowitz knew of defects at
the property that had not been repaired by the Shields.

Finally, with
regard to the Shermans= contention that Elkowitz himself admitted
that he was required to disclose Aall matters
relating to the property,@ what Elkowitz actually testified was, AAs a realtor C as a listing
agent, I have to disclose any defects I am made aware of to all parties
involved.@ 
This testimony, that Elkowitz was obligated to disclose defects he was Aaware of,@ is consistent
with the listing broker or agent=s general duty to
disclose known defects to potential purchasers. 
See Kubinsky, 811 S.W.2d at 715. 
It is also consistent with our analysis of this case.

Therefore, we hold
that there is no evidence in the record to support the Shermans= claims that no
evidence no evidence Elkowitz and Re/Max misrepresented or failed to disclose
any defects in the property. 

2.       As a Matter of Law, Appellees were Not
Required to Disclose the Earlier Lawsuit.








We next turn to
the Shermans= claim that Elkowitz and Re/Max can be
held liable for the failure to disclose the earlier lawsuit against the former
owner of the property.  As discussed
above, Elkowitz knew of the lawsuit because Amy Shields asked Elkowitz whether
she should disclose the lawsuit in the Seller=s Disclosure
Notice.  Her question arose because the
notice asked whether the seller was aware of any Alawsuits or other
legal proceedings directly or indirectly affecting@ the
property.  Elkowitz responded that the
lawsuit did not have to be disclosed. 
The Shermans= real estate expert at trial opined that
the lawsuit should have been disclosed. 
We disagree and hold that, as a matter of law, the earlier lawsuit did
not have to be disclosed in the Seller=s Disclosure
Notice because it was dismissed several years before the Shields put the
property on the market.  We explain
below.

We begin our
analysis of this issue with the language of the disclosure notice, which
provides as follows:

5.       Are
you (Seller) aware of any of the following: [Mark Yes (Y) if you are
aware, mark No (N) if you are not aware.]

Y        N

. . . 

G       G       Any
lawsuits [or other legal proceedings] directly or indirectly
affecting the Property. [If yes, describe:

Condemnation proceedings:
____________________________________________________________

Pending or threatened change in zoning or deed
restrictions: ____________________________________________________________

Other: _______________________________________ ]

. . .

If the answer to any of the items
in Section 5 is yes, explain (attach additional sheets if necessary):
_____________________________________________








The bracketed
portion of this question contained in the form was added by the Texas
Association of Realtors (ATAR@).  Because their form does vary slightly from
the language contained in section 5.008 of the Texas Property Code and because
one could argue that the variance may narrow the scope of the question, we will
interpret the question as it is worded in the statute.  See McIntyre v. Ramirez, 109 S.W.3d 741,
744 (Tex. 2003) (stating that primary objective in interpreting a statute is to
determine and give effect to the legislature=s intent).  Our statutory analysis begins with the Aplain and common
meaning of the statute=s words.@  See id. 
If the statutory language is unambiguous, we will interpret the
statute according to its plain meaning.  Id.  We determine legislative intent from the
entire act and not just its isolated portions.  City of San Antonio v. City of Boerne,
111 S.W.3d 22, 25 (Tex. 2003).  Viewing
this question in the context of the entire document, the question appears to be
directed to pending lawsuits. 

First, if the
legislature had intended for prior lawsuits to be listed, it could have
included a phrase indicating this.  See
Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer, 904 S.W.2d 656, 659
(Tex. 1995) (stating rule of statutory construction that when the legislature
employs a term in one section of a statute and excludes it in another section,
the term should not be implied where excluded); Moran v. City of Houston,
58 S.W.3d 159, 162B63 (Tex. App.CHouston [14th
Dist.] 2001, pet. denied) (same).  In
other parts of the form, the legislature asked for disclosure of certain
conditions that occurred in the past, such as APrevious Fires,@ APrevious Flooding,@ APrevious
Structural or Roof Repair,@ APrevious Termite
Treatment,@ and APrevious Termite
Damage.@  See Tex.
Prop. Code  ' 5.08(b).  The legislature did not include this more
expansive language when it referred to lawsuits.

Second, in its
beginning paragraph, the notice emphasizes in bold that it is a  disclosure of the condition of the property Aas of the date
signed by seller.@ 
This instruction further supports our conclusion that the notice
requires disclosure only of pending lawsuits, because the notice is seeking
current information, which would include current legal proceedings.  Interpreting the question to require old,
non-pending lawsuits injects an element of uncertainty not there if it is read
to require only currently pending lawsuits. 
For example, would a homeowner be required to list a twenty-year-old
lawsuit that had no current relevance to the property?

Thus, we hold that
the statutory form did not require disclosure of a lawsuit that was not
pending.  We also hold that the TAR form
the Shields actually signed did not ask for, or otherwise require, disclosure
of a lawsuit that was not pending.  If
anything, the TAR form was narrower in scope as reflected by the portions
bracketed above.  By specifically listing
condemnation and zoning proceedings, that form draws the focus more toward
current legal proceedings affecting the owner=s ability to
freely use and enjoy the land.








For these reasons
then, we hold that the earlier lawsuit brought by the Shields against the
former owner was not required to be disclosed on the Seller=s Disclosure
Notice, and that Elkowitz and Re/Max cannot be liable for its nondisclosure.

CONCLUSION

In conclusion, in
response to the Shermans= sole issue, we hold that the trial court
did not err in granting Elkowitz and Re/Max a directed verdict on the Shermans= claims, and we
affirm the trial court=s judgment.     

 

 

 

 

/s/      Wanda
McKee Fowler

Justice

 

 

 

 

Judgment rendered
and Opinion filed February 19, 2004.

Panel consists of
Justices Yates, Hudson, and Fowler.

 











[1]  See Tex. Bus. & Com. Code ' 27.01.





[2]  See Tex. Bus. & Com. Code '' 17.46(b)(5), (7), (9), (12), (13), (24) & 17.50.





[3]  In their
brief, the Shermans contend the evidence also supports a claim for negligent
misrepresentation.  Appellees respond
that the claim is not supported by the Shermans=
petition, but the Shermans point out that the trial court permitted the jury to
consider the claim against the Shields. 
Even if we accept that a negligent misrepresentation claim was tried by
consent, however, our analysis of the issue is unaffected.  





[4]  The Shermans
also state in their brief that appellees=
Multiple Listing Service listing of the property further evidences appellees= misrepresentations, but they make no argument that
the MLS listing constituted a representation that they relied on in purchasing
the home.  In any event, the property is
listed as having no Aknown@ defects; therefore, even if we were to consider the
listing as a representation of appellees, our analysis would not change. 





[5]  In their
brief, the Shermans primarily complain about the failure to disclose defects;
however, they sometimes also complain about appellees= failure to disclose Aprior
repairs,@ which are also variously termed Alimited@ or Aunfinished@ repairs.  However, the Shermans do not specify what
repairs they contend should have been disclosed, and they point to no evidence
that appellees had knowledge of any specific repairs that should have been
disclosed.  For purposes of this opinion,
our references to Adefects@ will
include all information we understand the Shermans contend was wrongfully
withheld from them.





[6]  Although Elkowitz and Re/Max did
not sign the disclosure notice in the spaces provided for  AListing Broker@ and AOther Broker,@ the Shermans point out that
Elkowitz faxed the completed notice from his offices to the Shermans= realtor, the notice was
incorporated into the earnest money contract, and Elkowitz and Re/Max  executed the contract as AListing Broker@ and AListing Associate.@ 
Elkowitz and Re/Max also do not
claim that the absence of their signature on the form absolved them of any
potential misrepresentations contained in it. 
As a result, we will review the Shermans= claims
as if Elkowitz and
Re/Max signed the form.





[7]  At oral
argument, the Shermans argued that Elkowitz was negligent in, among other
things, telling Amy Shields to not disclose the earlier lawsuit without knowing
the details of the lawsuit.  However, a
real estate agent or broker has no legal duty to inspect listed property and
disclose all facts which might materially affect its value or
desirability.  See Hagans v.
Woodruff, 830 S.W.2d 732, 736B37 (Tex.
App.CHouston [14th Dist.] 1992, no writ) (upholding
directed verdict for real estate broker on buyers=
negligence claims). 





[8]  Amy Shields
admitted that she discussed the settlement with Elkowitz, and went on to state
that AI think he was aware . . . that we didn=t get very much money at all, and I think he was aware
that we spent a lot more money [than] that repairing the house.@