**Norma SMITH, Appellant,**

v.

**Robert "Bob" TILTON, Individually; and Robert Tilton d/b/a/ Robert Tilton Ministries; and Word of Faith World Outreach Center Church, Inc.; and Word of Faith World Outreach Center Church, a Successor Thereto, Appellees.**

**No. 05–96–00071–CV.**

Court of Appeals of Texas, Dallas.

Aug. 25, 1999.

---

C. Tony Wright, Law Offices of C. Tony Wright, P.C., Dallas, for appellant.

Rhonda Johnson Byrd, John B., Kronenberger, Thompson, Coe, Cousins & Iron, LLP, Dallas, for appellee.

Before Justices OVARD, WHITTINGTON, and MOSELEY.

## O P I N I O N

Opinion By Justice MOSELEY.

Appellant Norma Smith filed suit against appellees Robert "Bob" Tilton, in-

dividually; Robert Tilton d/b/a Robert Tilton Ministries; Word of Faith World Outreach Center Church, Inc.; and its successor, Word of Faith World Outreach Center Church. She asserted a number of tort and statutory causes of action arising from various representations allegedly made by appellees. These representations can be characterized as: (1) representations made as appellees (in appellant's words) engaged in "extensive television marketing and extensive mail propaganda ... proph[esying] many cures" and soliciting pledges and contributions; (2) representations made in a mailing addressed to appellant's husband, Tommie, that was sent and received after Tommie's death and promised Tommie a "miracle day"; and (3) representations made in two dun letters asserting that Tommie, after his death, had pledged or vowed a contribution to the church. The trial court ultimately granted summary judgment against appellant on all of her claims. She appeals, asserting seven points of error.

We conclude the statements made in the course of the first two factual episodes described above (the television broadcasts and mail marketing and the "miracle day" literature) are representations of appellees' religious beliefs and are therefore constitutionally protected from judicial scrutiny. However, the statements made in the two dun letters (that Tommie pledged or vowed a contribution after his death) are not representations of appellees' religious beliefs and are not constitutionally protected from judicial scrutiny. For these and other reasons set forth below, we affirm in part and reverse and remand in part the trial court's judgment.

## FACTUAL BACKGROUND

When we review a summary judgment, we accept as true evidence in favor of the nonmovant, indulging every reasonable inference and resolving all doubts in the nonmovant's favor.[1] In addition, we accept as true evidence in support of the motion if not controverted.[2] From this perspective, we review the evidence before the trial court.

In 1990, appellant and her husband, Tommie, watched appellees' television broadcasts, received mail from appellees, and became followers of the Word of Faith World Outreach Center Church pastored by Tilton. As a result of appellant's and Tommie's telephone calls to the church, Internal Data Management, Inc. (IDM), which contracted to provide data processing services to the church, opened separate "partner records" for appellant and Tommie. IDM individually numbered each partner record and recorded on the partner records the mailings sent and received by IDM.

The first time appellant called the church's prayer line, she asked the prayer minister answering the call to pray for herself and her family. Appellant made a second call to pledge $100 and gave the church her name and address. She called the church's prayer line for the third time on October 13, 1990, the day Tommie died. She told the prayer minister she needed prayer because Tommie, a follower of the church, had passed away. Appellant and the prayer minister prayed together.

In January 1991, appellant received literature from the church promising Tommie a "miracle day" and soliciting a contribution. Appellees' literature included the following statements: "Tommie, this [January 23, 1991] is your miracle day!" "This is your miracle launch date into your decade of miracles." "Get ready to receive your miracles." Appellant stated she suffered severe emotional distress because the literature she received promised "a miracle day" for Tommie when he was already dead.

Appellant sent no money in response to this literature. Instead, she made a fourth call, this time to the church and not to the prayer line. She told the person who answered that she had already reported Tommie had passed away and asked the church not to send any more church literature addressed to her or to Tommie.

**1.** *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985).

**2.** *See Swilley v. Hughes,* 488 S.W.2d 64, 67 (Tex.1972).

Nevertheless, in February and March 1991, appellant received duns for money supposedly pledged or vowed by Tommie on December 21, 1990, about two months after he died. These two identical pledge/vow letters were addressed to Tommie and included his partner number. Each letter stated that Tommie had made a pledge/vow of $100 on December 21, 1990 (approximately two months after his death) and that the pledge/vow remained unpaid. Each letter then included telephone numbers and business hours for "Partner Relations." Following this information, each letter included spaces for offerings toward previous pledge/vows, additional pledge/vows, and tithes. Each letter then had a space for prayer requests and directed the reader to testimonies on the back of the letters from persons who "vow[ed] and pray[ed]." Each letter closed with a request to return the statement with the next "Seed Faith offering" and an invitation to attend appellees' worship service. Although appellant did not send any money in response to these letters, she claims they also caused her severe emotional distress. Appellant continued to receive literature from the church until April 1992, when she filed suit against appellees.

IDM's records for Tommie indicated he first contacted the church on September 7, 1990, and his partner record was opened September 12, 1990. IDM sent Tommie the church's introductory ministry materials, which were sent to all new partners. A partner reply letter (coded with Tommie's partner number) was included with the introductory materials; this letter was returned to IDM, along with ten cents. Another partner reply letter, with Tommie's partner number coded on it, was sent to Tommie on December 10, 1990 (after his death on October 13, 1990). According to IDM, this coded letter was returned to IDM on December 21, 1990, with a pledge in the amount of $100.

IDM's records regarding Tommie also showed that IDM mailed its last ministry letter to Tommie on June 10, 1991. Be-cause IDM did not receive a further partner response with Tommie's number, IDM's computer program automatically deleted Tommie's partner number. IDM's records reflected that Tommie did not receive ministry mailings after his partner number was deleted. According to the records, IDM was notified for the first time that Tommie was deceased on April 23, 1992.

IDM's records regarding appellant indicated she first contacted the church on November 21, 1990, when she called the phone center and made a pledge or vow of $100. Her partner record also shows that she received free ministry materials in November 1990 and April 1991. IDM received a partner reply letter coded with appellant's partner number and a prayer request on April 18, 1991; because IDM received no further responses, appellant's partner number was automatically deleted from further ministry mailings. On April 23, 1992, her partner record was coded "lockout," which meant that IDM would not send further mailings. IDM's president stated in an affidavit that "IDM also first received notification on that date that [Tommie] had a separate partner record."

## PROCEDURAL BACKGROUND

Appellant's original petition generally asserted that appellees: (1) engaged in "extensive television marketing and extensive mail propaganda ... proph[esying] many cures" and soliciting pledges and contributions; (2) sent appellant the "miracle day" publications; and (3) sent appellant two dun letters asserting that Tommie had pledged or vowed a contribution to the church after his death. Based on each of these three factual episodes, she asserted the following causes of action against appellees: (1) intentional and negligent infliction of emotional distress; (2) intentional and negligent misrepresentation; (3) fraud; (4) breach of fiduciary duty; and (5) violations of the Texas Deceptive Trade Practices—Consumer Protection Act (DTPA). Appellant alleged that appellees' acts constituting negligent infliction of

emotional distress "were done under gross circumstances as to constitute gross negligence." She also sued for punitive damages under her cause of action for negligent misrepresentation.

On May 11, 1992, appellees moved for summary judgment ("the initial motion"). Appellees asserted that all of appellant's causes of action were based on religious speech, which was protected by the United States and Texas Constitutions, and that appellant could not establish a cause of action for fraud because the First Amendment prohibited a court from inquiring into the falsity of religious beliefs. (Appellees did not specifically assert that state constitutional grounds barred appellant's causes of action for fraud.) Appellees also argued the DTPA did not apply because they were not engaged in trade or commerce nor was appellant a consumer, as those terms were statutorily defined.

Based on the initial motion, on March 5, 1993, the trial court granted partial summary judgment for appellees on all of appellant's causes of action except intentional and negligent infliction of emotional distress; later, the court modified its partial summary judgment to reinstate appellant's fraud causes of action and dismiss her negligent infliction of emotional distress claims.

Thereafter, appellant filed a "first amended original petition." She generally recounted the three factual episodes described above, albeit with some differences in description. Based on these three episodes, appellant reasserted her claims for intentional infliction of emotional distress and fraud. In addition, appellant pleaded

general claims for negligence and gross negligence.

Appellant's amended petition further stated: "The following causes of action were stricken as a result of [s]ummary [j]udgment. [Appellant] does not abandon these causes of action, but repleads them to the Court only for purposes of appeal." She then alleged claims for intentional and negligent misrepresentation, breach of fiduciary duty, violation of the DTPA, and negligent infliction of emotional distress.[3]

Appellees responded to the amended petition by filing a number of motions for summary judgment. Appellees' "Third Motion for Summary Judgment" argued *Boyles v. Kerr*[4] barred any recovery for negligent infliction of emotional distress. Appellant filed a response agreeing that *Boyles* was "dispositive and [that negligent infliction of emotional distress] is no longer recognized as an independent cause of action in Texas, [and] it should be dismissed." The court specifically granted appellees' third motion for summary judgment, thus dismissing appellant's claim for negligent infliction of emotional distress (and gross negligence) based on *Boyles.*

Appellees directed their comprehensive motion for summary judgment to appellant's claims for intentional infliction of emotional distress, fraud, and "negligent misrepresentation and gross negligence claims." Appellees stated their motion was "based, in part, on 42 U.S.C. § 2000bb [the Religious Freedom Restoration Act of 1993 (RFRA)], the First Amendment to the United States Constitution, Article I, § 6 of the Texas Constitution, and pertinent Texas and federal case law...."[5]

---

**3.** We note that appellant's allegations of causes of action for "intentional misrepresentation" add nothing to appellant's fraud causes of action. *See Darwin v. Fugit,* 914 S.W.2d 621, 627 (Tex.App.—Fort Worth 1995, writ denied) (listing elements for cause of action for fraud *or* intentional misrepresentation, citing *Trenholm v. Ratcliff,* 646 S.W.2d 927, 930 (Tex.1983)(fraud case)). Therefore, we do not address these allegations separately from appellant's fraud causes of action.

**4.** 855 S.W.2d 593, 597 (Tex.1993) (holding "there is no general duty [in Texas] not to negligently inflict emotional distress").

**5.** *See* U.S. CONST. amend. I; TEX. CONST. art. I, § 6; 42 U.S.C.A. §§ 2000bb to 2000bb–4 (West 1994).

The comprehensive motion for summary judgment also asserted that (1) appellant's fraud claim failed because religious representations, even if false, were protected by the First Amendment and thus not actionable, (2) appellant's intentional infliction of emotional distress claims were based on religious speech that was privileged under the United States and Texas Constitutions, and (3) the two-year statute of limitations barred appellant's negligent misrepresentation and gross negligence claims.

Appellant later supplemented her amended petition to assert new claims under the Fair Debt Collection Practices Act (FDCPA) and the Texas Debt Collection Practices Act (TDCPA) arising from the dun letters. Appellees directed their supplemental motion for summary judgment to appellant's claims for violation of these statutes. Together, appellees' comprehensive motion and supplemental motion for summary judgment sought to dispose of all remaining causes of action asserted in the amended original petition and its supplement.

On December 15, 1995, the trial court granted appellees' comprehensive and supplemental motions for summary judgment and dismissed all appellant's claims and causes of action with prejudice. Appellant then brought this appeal.

## STANDARD OF REVIEW

To prevail on a motion for summary judgment, a movant must establish that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law.[6] A defendant may properly obtain summary judgment only if, as a matter of law, the plaintiff could not succeed upon any of the theories pleaded.[7] To prove this, the defendant must conclusively negate at least one of the essential elements of each of the plaintiff's causes of action and/or conclusively establish all the elements of an affirmative defense as to each cause of action.[8]

If a defendant establishes his right to summary judgment as a matter of law, the burden shifts to the plaintiff to present evidence raising a genuine issue of material fact, thereby precluding summary judgment.[9] When, as here, the trial court's order granting summary judgment does not specify the ground or grounds it relied on for the ruling, we affirm the summary judgment if any theories presented in the motion are meritorious.[10] When an appellant does not properly challenge each of the independent grounds asserted for summary judgment as to a particular claim, we affirm the summary judgment as to that claim.[11] Although a broadly worded point of error complaining that the trial court erred in granting summary judgment is sufficient to preserve error, we affirm summary judgment as to a particular claim if an appellant does not present argument challenging all grounds on which summary judgment could have been granted as to that claim.[12]

## POINTS OF ERROR TWO AND FOUR

Applying the above standard of review to this case, we first discuss appellant's second and fourth points of error.

6. Tex.R. Civ. P. 166a(c); *Cathey v. Booth,* 900 S.W.2d 339, 341 (Tex.1995) (per curiam).

7. *See Havens v. Tomball Community Hosp.,* 793 S.W.2d 690, 691 (Tex.App.—Houston [1st Dist.] 1990, writ denied).

8. *Wornick Co. v. Casas,* 856 S.W.2d 732, 733 (Tex.1993); *Montgomery v. Kennedy,* 669 S.W.2d 309, 310–11 (Tex.1984). We note that rule 166a(i) of the rules of civil procedure was not in effect when the motions for summary judgment in this case were filed or determined. *See* Tex.R. Civ. P. 166a(i); *Phan Son Van v. Pena,* 990 S.W.2d 751, 753 n. 2 (Tex. 1999) (new rule applies to motions for summary judgment filed after September 1, 1997, effective date of new rule).

9. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979).

10. *Rogers v. Ricane Enters., Inc.,* 772 S.W.2d 76, 79 (Tex.1989); *see Cincinnati Life Ins. Co. v. Cates,* 927 S.W.2d 623, 627 (Tex.1996).

11. *See Williams v. Crum & Forster Commercial Ins.,* 915 S.W.2d 39, 43 (Tex.App.—Dallas 1995), *rev'd on other grounds,* 955 S.W.2d 267 (Tex.1997) (per curiam).

12. *See Malooly Bros., Inc. v. Napier,* 461 S.W.2d 119, 121 (Tex.1970).

## A. Point of Error Two—Religious Freedom Restoration Act

■ In her second point of error, appellant argues the trial court erred in granting summary judgment on the basis that RFRA barred her suit. After the trial court entered the final judgment in this case, the United States Supreme Court held RFRA unconstitutional in *City of Boerne v. Flores*.[13] Thus, RFRA will not support summary judgment for any claims. We sustain appellant's second point of error.

## B. Point of Error Four—Appellant's "Malooly" Point.

Appellant's fourth point of error generally asserts that the trial court erred in granting summary judgment. Under *Malooly,* this point of error allows appellant to argue all the possible reasons why the trial court erred in granting summary judgment as to each claim.[14] However, appellant argues only that the trial court erred by granting a "no cause of action" summary judgment without giving appellant an adequate opportunity to plead a viable cause of action.[15]

■ This argument is without merit. Appellees did not assert that appellant failed to state a cause of action. Their principal argument was that appellant's claims could not be proven because the courts are constitutionally prohibited from inquiring into the truth or falsity of the representations on which appellant's claims were based. We overrule appellant's fourth point of error.

■ Appellant asserts no other point of error attacking the summary judgment disposing of her claims for negligent infliction of emotional distress, or for violations of the DTPA, the FDCPA, or the TDCPA. Nor does appellant argue or cite any authority for the proposition that the trial court erred in summarily disposing of those claims. Points of error asserted on appeal but not briefed are waived.[16] Therefore, we affirm the trial court's judgment with respect to appellant's claims for negligent infliction of emotional distress, violations of the DTPA, violations of the FDCPA, and violations of the TDCPA.

## CONSTITUTIONALLY PROTECTED RELIGIOUS SPEECH

In appellant's first and third points of error, she contends the trial court erred in granting summary judgment on the grounds that the First Amendment to the United States Constitution and article one, section six of the Texas Constitution bar her claims for relief. In her sixth and seventh points of error, appellant contends the trial court erred in granting summary judgment on her claims for fraud and intentional infliction of emotional distress on the grounds that those causes of action cannot be established.

After the trial court entered the final judgment in this case, the Texas Supreme Court decided *Tilton v. Marshall,* another case involving appellees and the issues of constitutionally protected religious speech.[17] The parties' briefs argue at length regarding the application of *Tilton* to this case. Therefore, we will address the holdings in *Tilton* in some detail. We then analyze the representations arising

---

**13.** 521 U.S. 507, 117 S.Ct. 2157, 2172, 138 L.Ed.2d 624 (1997).

**14.** *See Malooly Bros., Inc.,* 461 S.W.2d at 121.

**15.** *See Massey v. Armco Steel Co.,* 652 S.W.2d 932, 934 (Tex.1983) (whether pleadings fail to state a cause of action may not be resolved by summary judgment).

**16.** *See Tindle v. Jackson Nat'l Life Ins. Co.,* 837 S.W.2d 795, 801 (Tex.App.—Dallas 1992, no writ).

**17.** 925 S.W.2d 672 (Tex.1996) (orig.proceeding).

from each of the three episodes to determine if they constitute constitutionally protected religious speech. We then address the effects of this determination on appellant's causes of action.

### A. *Tilton v. Marshall*

In *Tilton*, the plaintiffs asserted, *inter alia*, claims for intentional infliction of emotional distress resulting from watching relators' (appellees in this case) television broadcasts and receiving relators' mailings representing their religious ministry.[18] The court recognized that both the United States and the Texas Constitutions forbid inquiry into the truth or falsity of religious beliefs.[19] Further, the court noted that "the outrageousness and extremity of a representation is ... aggravated by being false or mitigated by being true."[20] The court held that the First Amendment to the United States Constitution and article one, section six of the Texas Constitution bar claims for intentional infliction of emotional distress where the conduct alleged to be extreme and outrageous arises from the representation of religious beliefs.[21]

*Tilton* also considered whether the trial court abused its discretion in refusing to dismiss the plaintiffs' fraud claims and related conspiracy claims against the relators.[22] The court stated that although article one, section six of the Texas Constitution and the First Amendment to the United States Constitution protect the free exercise of religion, "they do not necessarily bar all claims which may touch on religious conduct."[23] However,

the court stated, "[W]hen a plaintiff's suit implicates a defendant's free exercise rights, the defendant may assert the First Amendment as an affirmative defense to the claims against him."[24]

The court noted that proof of fraud involves proof that the defendant made a false representation.[25] The court distinguished between two categories of representations on which the plaintiffs' fraud claims were based. According to the court, a fraud claim arising from alleged promises to perform particular acts, which are matters other than faith or experience, did not "infringe upon [relators'] constitutional rights" and thus may be actionable.[26] However, "representations of religious doctrine or belief" are constitutionally protected from judicial inquiry and cannot serve as a basis for a claim of fraud.[27]

### B. Nature of Alleged Representations

#### 1. Representations in Television Broadcasts and Mail Marketing and in "Miracle Day" Brochure

■ Appellant alleged appellees' television broadcasts and mail marketing promised cures and solicited pledges and contributions. Specifically, as stated in the amended petition, appellees allegedly made representations that "miracle cures" had occurred. Further, the "miracle day" brochure mailed to appellant contained the following representations: "Tommie, this [January 23, 1991] is your miracle day!" "This is your miracle launch date into your decade of miracles." "Get ready to receive your miracles."

Following the holdings and the rationale of *Tilton*, we conclude these statements are representations of appellees' religious faith or beliefs. We hold the truthfulness or reasonableness of these statements is

18. *See id.* at 675–76, 676 n. 3, & 681–82.

19. *Id.* at 677–78, 681 (citing *United States v. Ballard*, 322 U.S. 78, 86–87, 64 S.Ct. 882, 88 L.Ed. 1148 (1944)); *see* U.S. CONST. amend. I; TEX. CONST. art. I, § 6.

20. *Tilton*, 925 S.W.2d at 681.

21. *See id.* at 682.

22. *See id.* at 678–79.

23. *Id.* at 677.

24. *Id.*

25. *See id.* at 678.

26. *Id.* at 679 (plurality part of opinion).

27. *Id.* at 679–80.

protected from judicial scrutiny by the First Amendment to the United States Constitution and article one, section six of the Texas Constitution.

### 2. Representations in the Dun Letters

■ Appellant's causes of action arising from the dun letters episode flow from the representation in the letters that Tommie had made a $100 pledge/vow to appellees on December 21, 1990 (approximately two months after his death). These are representations of Tommie's alleged actions, not representations of appellees' religious faith or beliefs. Thus they are not protected by the First Amendment to the United States Constitution or article one, section six of the Texas Constitution. Although other portions of each dun letter may express appellees' religious faith or beliefs, appellant specifically grounded her complaints on the representations in each letter concerning Tommie's alleged actions.

### CLAIMS ARISING FROM TELEVISION BROADCASTS, MAIL MARKETING AND THE "MIRACLE DAY" BROCHURE

We now turn to appellant's claims arising from the representations made in appellees' television broadcasts and mail marketing and in the "miracle day" brochure.

### A. Intentional Infliction of Emotional Distress and Fraud

■ The representations in the television broadcasts and mail marketing and the "miracle day" literature are representations of appellees' religious faith and belief. Under *Tilton*, appellant's claims for intentional infliction of emotional distress and fraud based on those representations are barred. Therefore, we overrule appellant's first, third, sixth, and seventh points of error with respect to appellant's claims

for intentional infliction of emotional distress and fraud arising from the representations in the television broadcasts and mail marketing and the "miracle day" literature. We affirm the trial court's judgment with respect to those claims.

### B. Negligent Misrepresentation

■ Appellant alleged in her original petition that appellees were liable for negligent misrepresentation based on the representations in their television broadcasts and mail marketing that miracle cures had occurred and based on representations in the "miracle day" literature promising a "miracle day" for Tommie on a date after his death. These representations constitute representations of appellees' religious beliefs.

One of the elements of a negligent misrepresentation claim is that the defendant supplied false information.[28] Thus, proving negligent misrepresentation as alleged by appellant requires the trial court to inquire into the truth or falsity of appellees' representations of religious beliefs.

Although *Tilton* did not involve a claim of negligent misrepresentation, it held the First Amendment to the United States Constitution and article one, section six of the Texas Constitution preclude inquiry into these issues.[29] Applying the rationale of *Tilton*, we conclude the trial court properly dismissed appellant's claims for negligent misrepresentation arising from the first two episodes. We overrule appellant's first and third points of error with respect to appellant's claims for negligent misrepresentation arising from the representations in the television broadcasts and mail marketing and the "miracle day" literature. We affirm the trial court's judgment with respect to this claim.

---

28. *See First Interstate Bank of Tex., N.A. v. S.B.F.I., Inc.*, 830 S.W.2d 239, 245 (Tex. App.—Dallas 1992, no writ) ("The elements of a cause of action for negligent misrepresentation are: (1) the representation is made by the defendant in the course of its business or in a transaction in which it has a pecuniary interest; (2) the defendant supplies false information for the guidance of others in their business; (3) the defendant did not exercise

reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation.") (citing *Cook Consultants, Inc. v. Larson*, 700 S.W.2d 231, 234 (Tex.App.—Dallas 1985, writ ref'd n.r.e.)); RESTATEMENT (SECOND) OF TORTS § 552 (1977).

29. *See Tilton*, 925 S.W.2d at 679, 682.

## C. Breach of Fiduciary Duty

 Appellant alleged in her original petition that appellees were somehow liable for breach of fiduciary duty based on the complained-of representations in their television broadcasts and mail marketing and the representations in the "miracle day" literature. Although no ground in appellees' motion for summary judgment was specifically directed to these claims, appellees argued all of these claims were based on religious speech that was privileged under the United States and Texas Constitutions. The trial court granted summary judgment on these claims without specifying the grounds for its ruling.

Appellant's breach of fiduciary claims are not pleaded with any specificity. However, appellant apparently claims that appellees breached a fiduciary obligation to her by making the representations described above. Any inquiry into whether appellees breached any fiduciary obligations would necessarily involve the truthfulness or falsity of the representations.

We have already concluded the complained-of representations made in the course of the first two episodes are representations of appellees' religious beliefs. Although *Tilton* did not involve claims for breach of fiduciary duty, it clearly precludes inquiry into the truth or falsity of such beliefs.[30] Applying the rationale of *Tilton,* we conclude the trial court properly dismissed appellant's claims for breach of fiduciary duty arising from the first two episodes. We overrule appellant's first and third points of error with respect to appellant's claims for breach of fiduciary duty arising from the representations in the television broadcasts and mail marketing and the "miracle day" literature. We affirm the trial court's judgment with respect to those claims.

## APPELLANT'S CLAIMS ARISING FROM THE DUN LETTERS

### A. Intentional Infliction of Emotional Distress

Appellant alleged in her amended petition that appellees were liable for intentional infliction of emotional distress based on the representations in the dun letters that Tommie had made a $100 pledge to the church on December 21, 1990, approximately two months after his death. We have already concluded that these representations are representations of Tommie's alleged actions, not representations of appellees' religious faith or beliefs. Thus, they are not protected by the First Amendment to the United States Constitution or article one, section six of the Texas Constitution.

 However, in their comprehensive motion for summary judgment, appellees also asserted that the summary judgment evidence concerning appellees' controls over the mailings negated the intent element of intentional infliction of emotional distress. Because appellant's brief does not challenge this possible ground for summary judgment, she has waived any error with respect to the entry of summary judgment on her claim for intentional infliction of emotional distress arising from the dun letters episode.[31] Therefore, we need not reach appellant's first, third, and seventh points of error with respect to this claim, and we affirm the trial court's judgment with respect to this claim.

### B. Fraud

Appellant's amended petition generally alleged that appellees "made certain false representations of material fact ... in the correspondence which [appellees] mailed to the Smiths." In their comprehensive motion for summary judgment, appellees argued appellant's fraud claims were barred because their representations constituted speech that was protected by the

---

30. *See id.*

31. *See Williams,* 915 S.W.2d at 43.

First Amendment to the United States Constitution. (Appellees did not specifically assert that state constitutional grounds prohibited appellant's cause of action for fraud.)

As we concluded above, the statements in the dun letters are not representations of appellees' religious belief and are therefore not protected by the First Amendment. We also concluded above that appellant's claim for intentional misrepresentation is the same as her fraud claim. Further, neither the holdings nor the rationale of *Tilton* bars appellant from pursuing her fraud claim arising from this episode.[32] We sustain appellant's first and sixth points of error with respect to appellant's fraud claim arising from the dun letters episode. Appellees asserted no other grounds on which the trial court could have properly granted summary judgment on this claim. Therefore, we reverse the trial court's judgment with respect to appellant's fraud claim arising from the dun letters episode and remand this claim to the trial court for further proceedings.

## C. Negligent Misrepresentation

Appellant alleged in her original petition that appellees were liable for negligent misrepresentation based on the representations in the dun letters that Tommie had made a pledge to the church on a date after his death. Appellees obtained summary judgment on this claim through their first motion for summary judgment, which asserted only their constitutional arguments for summary judgment.

Summary judgment on appellant's negligent misrepresentation claim arising from the dun letters cannot be sustained on constitutional grounds because those statements are not constitutionally protected representations of appellees' religious belief. We sustain appellant's first and third points of error with respect to appellant's claim for negligent misrepresentation arising from the dun letters episode.

Appellees argue we should affirm the summary judgment on appellant's negligent misrepresentation claim arising from the dun letters based on the statute of limitations. However, the trial court disposed of this claim pursuant to appellees' first motion for summary judgment, well before appellees filed their comprehensive motion for summary judgment which asserted limitations as a ground for summary judgment. Thus, the trial court could not have properly disposed of appellant's negligent misrepresentation claim arising from the dun letters on limitations grounds.

This conclusion is not affected by the fact that appellant repleaded her claim for negligent misrepresentation based on the dun letters after the trial court had granted a partial summary judgment disposing of those claims. Appellant's amended petition noted that she was repleading this claim "only for purposes of appeal." Appellant thus acknowledged that the claim was not an active claim before the court.

The only grounds asserted by appellees for granting summary judgment on appellant's negligent misrepresentation claim arising from the dun letters were the constitutional grounds discussed above. Because the trial court improperly granted summary judgment on these grounds, we reverse the summary judgment on appellant's negligent misrepresentation claims arising from the dun letters episode and remand this claim to the trial court for further proceedings.

## D. Breach of Fiduciary Duty

Appellant alleged in her original petition that appellees were somehow liable for breach of fiduciary duty based on the representations in the dun letters that Tommie had made a pledge to the church on a date after his death. Appellees' sole ground for summary judgment was that appellant's claim was based on appellees' representations of religious belief, which were constitutionally protected.

---

32. *See Tilton*, 925 S.W.2d at 677.

Because the representations in the dun letters are not constitutionally protected representations of appellees' religious belief, the trial court erred in granting summary judgment on appellant's breach of fiduciary duty claim arising from those representations. We sustain appellant's first and third points of error with respect to this claim. We reverse the trial court's judgment with respect to this claim and remand it to the trial court for further proceedings.

## ALLEGATIONS OF NEGLIGENCE AND GROSS NEGLIGENCE IN APPELLANT'S AMENDED PETITION

As noted above, appellant's original petition alleged claims for negligent misrepresentation (including a request for punitive damages) and negligent infliction of emotional distress (including an allegation that appellees' actions were "done under gross circumstances as to constitute gross negligence") arising from all three factual episodes. As discussed above, the trial court entered summary judgment dismissing these claims.

Thereafter, appellant filed her amended petition, in which she generally alleged negligence and gross negligence arising from the same three factual episodes. A comparison of the two pleadings makes clear that the general allegations of negligence and gross negligence arose from the same facts alleged in the original petition. These claims did not differ from appellant's negligent misrepresentation and negligent infliction of emotional distress claims, which she had pleaded earlier and which the trial court had disposed of by partial summary judgment. Appellant's counsel conceded as much during oral argument. Therefore, we conclude these allegations in appellant's amended petition added nothing to the claims before the trial court and do not constitute new or independent claims on which the trial court granted summary judgment based on appellees' subsequent comprehensive motion for summary judgment. Thus, we need not address appellant's fifth point of error that asserts the trial court erred in granting summary judgment because her "negligent misrepresentation and gross negligence causes of action" were not barred by the two-year statute of limitations.

## CONCLUSION

Based on the above disposition of appellant's points:

(1) We affirm the trial court's judgment with respect to the following causes of action arising from representations made in appellees' television broadcasts and mail marketing and the representations made in the "miracle day" literature: intentional and negligent infliction of emotional distress, fraud, negligent misrepresentation, breach of fiduciary duty, and violations of the DTPA;

(2) We affirm the trial court's judgment with respect to the following causes of action arising from the representations made in the dun letters: intentional and negligent infliction of emotional distress, violations of the DTPA, and violations of the FDCPA and the TDCPA; and

(3) We reverse the trial court's judgment with respect to the following causes of action arising from the representations made in the dun letters: fraud, negligent misrepresentation, and breach of fiduciary duty. We remand these claims to the trial court for further proceedings.