NUMBER 13-08-00264-CV


COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


NETRANA, L.L.C., Appellant,


v.


TXU BUSINESS SERVICES COMPANY, Appellee.

 
 

On appeal from the 298th District Court of

Dallas County, Texas.

 


MEMORANDUM OPINION


Before Chief Justice Valdez and Justices Rodriguez and Garza

 Memorandum Opinion by Chief Justice Valdez 

 In five issues, which can be properly construed as two, appellant, Netrana, L.L.C.
("Netrana"), challenges a summary judgment granted in favor of appellee, TXU Business
Services Company ("TXU"). We affirm.

I. Background

 On June 2, 2006, Netrana, a consulting firm, contracted with TXU to provide project
management services. The agreement provided the following:

ARTICLE 6: TERM OF AGREEMENT


The term during which [Netrana] will perform Services under this Agreement
is for the period commencing June 6, 2002, and ending August 31, 2002,
(the "Term") unless terminated earlier pursuant to the provisions of the
Agreement. The Term may be extended by a written amendment signed by
both parties. . . .


[Netrana] will perform Services a minimum of twelve (12) days per month
during the Term of this Agreement.


ARTICLE 7: COMPENSATION


[Netrana] will be entitled to compensation for authorized professional
Services at the following rate and subject to the conditions contained in this
Agreement.


 $1200.00/day plus expenses


 . . . . 


ARTICLE 31: ENTIRETY OF AGREEMENT


This Agreement, together with any and all attachments or documents
incorporated into it, constitutes the entire Agreement between the parties,
and all prior negotiations, undertakings, understanding and agreements
between the parties relating to the Services are merged into this Agreement.


The agreement was signed by Scott Potter, vice president of Netrana, and Debra Davis,
senior contracts representative of TXU. On September 1, 2002, the same party
representatives signed an amendment which extended the agreement to December 31,
2002, and provided that, the agreement was to continue on a month-to-month basis
thereafter. The amendment included the following relevant provision:

ARTICLE 2: PURPOSE


This Amendment modifies, alters or changes specific terms and conditions
of [the Agreement] that exist between the parties hereto. The modified terms
and conditions set out below supersede and replace in their entirety any
contradictory terms or conditions contained in the Agreement. Except as
modified in the Amendment or previous amendments, the Agreement will
remain in full force and effect.


 . . . . 


ARTICLE 3: MODIFICATIONS


 . . . . 


 D. Compensation: The language below supercedes and replaces the
language contained in the original Agreement.


 [Netrana] will be entitled to compensation for authorized Services at
the following rate and subject to the conditions contained in this
Agreement. [Netrana] will be compensated for hours actually worked.


 $1200.00/day plus expenses or $150.00/hr. if less than 1 day.


Additionally, the amendment provided that after December 31, 2002, TXU could terminate
the agreement by providing two weeks written notice.

 On December 13, 2004, TXU provided written notice to Netrana of its termination
of the agreement. Netrana then sued TXU for breach of contract, fraudulent inducement,
"intentional and/or negligent misrepresentation," fraud, false promise, and promissory
estoppel. TXU answered with a general denial and asserted several affirmative defenses,
including waiver of Netrana's rights under the agreement or amendment. 

 On August 31, 2007, TXU filed a hybrid motion for summary judgment. As to
Netrana's breach of contract claim, TXU asserted, as a traditional ground for summary
judgment, that there was no breach of any written agreement, and it attached, inter alia,
the agreement and its amendment. As to Netrana's remaining claims, TXU asserted no-evidence grounds for summary judgment. Netrana responded to the breach-of-contract
ground by arguing that the agreement and amendment could be read as providing for a
minimum payment of $14,400 per month, representing twelve days of work. Netrana
further argued that TXU "ratified" such an agreement by paying invoices that it submitted
until July 2004, and Netrana attached numerous invoices to its response. Additionally,
Netrana contended that the affidavits of Potter and Nick Cioll, the TXU representative who
negotiated the contract with Potter, created fact issues as to its remaining claims. Cioll's
affidavit, which was attached to Netrana's response, provides in relevant part:

It is true that Scott Potter, who represented NETRANA, LLP, informed me
that Scott Potter refused to agree to the terms of the contract without a
guaranteed minimum per month which was the reason TXU agreed to the
following provisions:


c. At all relevant times it was understood and agreed that NETRANA[,]
L.L.C. would be paid for a minimum of 12 days pursuant to the daily
rate of $1,200.00, according to the "Article 6: Term of Agreement"


d. In exchange NETRANA, L.L.C. agreed to be ready, willing and able
to perform professional services for a minimum of 12 days per month,
TXU agreed to pay the sum of $1,200.00 per day for those 12
minimum days, for a minimum sum of $14,400 per month per month
[sic] for training until the agreement was terminated pursuant to the
agreement's written notice of termination.


In addition, NETRANA, L.L.C., agreed to an hourly rate of $150 per hour for
those days when less than a full day was worked. The hourly amount was
intended to be in addition to the minimum per month.


At that time, SCOTT POTTER informed TXU that unless NETRANA was
guaranteed a per month minimum until the contract was terminated
according to the terms, NETRANA could not afford to be available without
any work so NETRANA would not agree to perform any of the services.


 Additionally, Netrana filed a cross-motion for traditional summary judgment on its
breach of contract claim. On December 14, 2007, TXU objected to the affidavits of Potter
and Cioll on the ground that they constituted inadmissible parol evidence. The trial court
granted TXU's traditional motion for summary judgment as to Netrana's breach of contract
claim and its no-evidence motion for summary judgment on the remaining claims; it also
denied Netrana's motion for summary judgment. This appeal ensued.

II. Discussion

 In five issues, which we construe as two, Netrana contends that the trial court erred
by granting summary judgment to TXU on Netrana's intentional misrepresentation and
breach of contract claims. (1)

A. Standard of Review

 The trial court granted TXU a no-evidence summary judgment on Netrana's
intentional misrepresentation claim. We review a trial court's ruling on a no-evidence
motion for summary judgment for legal sufficiency. Mack Trucks, Inc. v. Tamez, 206
S.W.3d 572, 579-80 (Tex. 2006); King Ranch, Inc. v. Chapman, 118 S.W.3d 742, 750-51
(Tex. 2003). Accordingly, we review the evidence in the light most favorable to the
non-movant, disregarding all contrary evidence and inferences. City of Keller v. Wilson,
168 S.W.3d 802, 825 (Tex. 2005) (noting that review of a "no-evidence" motion for
summary judgment is effectively restricted to the evidence contrary to the motion); Ortega
v. City Nat'l Bank, 97 S.W.3d 765, 772 (Tex. App.-Corpus Christi 2003, no pet.) (op. on
rehr'g). The burden of producing evidence is entirely on the non-movant; the movant has
no burden to attach any evidence to the motion. See Tex. R. Civ. P. 166a(i). Summary
judgment is improper if the non-movant produces evidence to raise a genuine issue of
material fact. See id. To raise a genuine issue of material fact, the non-movant must
produce a scintilla of probative evidence. Ortega, 97 S.W.3d at 772. "Less than a scintilla
of evidence exists when the evidence is 'so weak as to do no more than create a mere
surmise or suspicion of a fact.'" Id. (quoting Kindred v. Con/Chem, Inc., 650 S.W.2d 61,
63 (Tex. 1983)). Conversely, more than a scintilla exists when the evidence "rises to a
level that would enable reasonable and fair-minded people to differ in their conclusions." 
Id. (citing Transp. Ins. Co. v. Moriel, 879 S.W.2d 10, 25 (Tex. 1994)). In determining
whether the non-movant has produced more than a scintilla of evidence, we review the
evidence in the light most favorable to the non-movant, crediting such evidence if
reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could
not. Tamez, 206 S.W.3d at 582; City of Keller, 168 S.W.3d at 827.

 Both parties moved for a traditional summary judgment on Netrana's breach of
contract claim. We review the traditional summary judgment de novo. Joe v. Two Thirty
Nine Joint Venture, 145 S.W.3d 150, 156 (Tex. 2004). The standards for reviewing a
summary judgment are well established: (1) the movant must demonstrate that there is
no genuine issue of material fact and that it is entitled to judgment as a matter of law; (2)
in deciding whether a disputed issue of material fact exists that would preclude summary
judgment, we take all evidence favorable to the non-movant as true; and (3) we indulge
every reasonable inference and resolve any doubts in favor of the non-movant. Nixon v.
Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex. 1985). When, as here, both parties
file motions for traditional summary judgment and the court denies one and grants the
other, we must review the summary-judgment evidence presented by both sides, decide
all questions presented, and render the judgment that the trial court should have rendered. 
City of Garland v. Dallas Morning News, 22 S.W.3d 351, 356 (Tex. 2000).

B. Intentional Misrepresentation

 A claim of intentional misrepresentation has the same elements as a fraud claim.
See Smith v. Tilton, 3 S.W.3d 77, 82 n.3 (Tex. App.-Dallas 1999, no pet.). The elements
of a cause of action for fraud are: (1) that a material representation was made; (2) the
representation was false; (3) when the representation was made, the speaker knew it was
false or made it recklessly without any knowledge of the truth and as a positive assertion;
(4) the speaker made the representation with the intent that the other party should act upon
it; (5) the party acted in reliance on the representation; and (6) the party suffered injury as
a result. In re FirstMerit Bank, N.A., 52 S.W.3d 749, 758 (Tex. 2001). A promise to do an
act in the future constitutes fraud only when made with no intention of performing the
promise at the time the promise was made. Formosa Plastics Corp. USA v. Presidio
Eng'rs & Contractors, Inc., 960 S.W.2d 41, 48 (Tex.1998). The mere failure to perform a
contract is not evidence of fraud. Id. Fraudulent intent may be established by either direct
or circumstantial evidence, and the subsequent failure to perform the promise, while not
alone dispositive, can be considered with other factors to establish intent. Spoljaric v.
Percival Tours, Inc., 708 S.W.2d 432, 434-35 (Tex. 1986).

 In what we consider its first issue, Netrana contends that the trial court erred by
granting TXU a no-evidence summary judgment on its intentional misrepresentation claim
because Cioll's and Potter's affidavits created a fact issue as to whether a false
representation was made by TXU representatives. Assuming that the affidavits were
properly before the court and indulging every reasonable inference in Netrana's favor,
Netrana does not mention any representations made by TXU representatives to Netrana
regarding a guaranteed minimum monthly payment. All the affidavits state is that Potter
wanted a guaranteed minimum monthly payment; they do not state that TXU made a
representation that it would guarantee Netrana a minimum monthly payment. Additionally,
subsections "c" and "d" of Cioll's affidavit, which Netrana claims were part of the
agreement, appear nowhere else in the record. Thus, there is no evidence that TXU made
any false representation. See Formosa Plastics, 960 S.W.2d at 47-48 (Tex.1998)
(providing that the mere failure to perform a contract is not evidence of fraud; rather, the
plaintiff must present evidence that the defendant made representations with the intent to
deceive and with no intention of performing as represented). Netrana's first issue is
overruled.

C. Breach of Contract 

 In order to succeed on a breach of contract claim, Netrana would have had to prove
that: (1) a valid contract existed; (2) it performed or tendered performance; (3) TXU
breached the contract; and (4) Netrana sustained damages as a result of the defendant's
breach. Adams v. H & H Meat Prods., Inc., 41 S.W.3d 762, 771 (Tex. App.-Corpus Christi
2001, no pet.). Netrana contends that it performed its obligations under the contract by
"standing ready, willing, and able to perform professional services" and that TXU breached
the guaranteed minimum payment provision of the contract. Thus, we look to the contract
under our well recognized rules of contract construction to determine if a minimum
payment provision existed in the amended agreement.

 In construing a written contract, the primary concern is to ascertain and to give effect
to the parties' intentions as expressed in the document. Frost Nat'l Bank v. L & F Distribs.,
Ltd., 165 S.W.3d 310, 311-12 (Tex. 2005). We consider the entire writing and attempt to
harmonize and to give effect to all of the contract's provisions. Id. at 312. We construe
contracts "'from a utilitarian standpoint bearing in mind the particular business activity
sought to be served'" and "'will avoid when possible and proper a construction which is
unreasonable, inequitable, and oppressive.'" Id. (quoting Reilly v. Rangers Mgmt., Inc.,
727 S.W.2d 527, 530 (Tex. 1987)). "The language in a contract is to be given its plain
grammatical meaning unless doing so would defeat the parties' intent." Amtech Elevator
Servs. Co. v. CSFB 1998-P1 Buffalo Speedway Office Ltd. P'ship, 248 S.W.3d 373, 379
(Tex.App.-Houston [1st Dist.] 2007, no pet.).

 If, after the pertinent rules of construction are applied, the contract can be given a
definite or certain legal meaning, it is unambiguous, and we construe it as a matter of law.
Frost Nat'l Bank, 165 S.W.3d at 312. However, if after such rules are applied, the meaning
of the contract remains uncertain or is susceptible to more than one reasonable
interpretation, it is ambiguous. Nat'l Union Fire Ins. Co. v. CBI Indus., Inc., 907 S.W.2d
517, 520 (Tex. 1995); Coker v. Coker, 650 S.W.2d 391, 393-94 (Tex. 1983). If a contract
is ambiguous, the contract's interpretation becomes a fact issue to be resolved by deciding
the parties' true intent, for which the fact finder may consider extraneous evidence of
intent. See Nat'l Union Fire Ins. Co., 907 S.W.2d at 520; Coker, 650 S.W.2d at 394-95.
Whether a contract is ambiguous is a question of law to be determined "by looking at the
contract as a whole in light of the circumstances present when the contract was entered."
Coker, 650 S.W.2d at 394.

 TXU moved for traditional summary judgment on the ground that the agreement and
its amendment required Netrana to work in order to be paid. In its second issue, Netrana
points to the affidavits of Cioll and Potter as support for the proposition that the intent of
the parties was to provide for a minimum monthly payment. Netrana further contends that
the trial court could not have granted TXU's objection to the affidavits of Cioll and Potter
because the objection was untimely and there is no written order sustaining the objections. 

 Neither of Netrana's procedural arguments were presented to the trial court. 
Therefore, they are waived. (2)
 See generally, Tex. R. App. P. 33.1. As to the merits of the
traditional summary judgment, we note that the agreement contained an integration clause,
providing that the written agreement constituted the entire agreement between the parties. 
The purpose of an integration clause is to invoke the parol evidence rule when appropriate. 
Burleson State Bank v. Plunkett, 27 S.W.3d 605, 615 (Tex. App.-Waco 2000, pet. denied). 
An unambiguous contract will be enforced as written, and parol evidence will not be
received for the purpose of creating an ambiguity or to give the contract a meaning
different from that which its language imparts. See David J. Sacks, P.C. v. Haden, 266
S.W.3d 447, 450 (Tex. 2008).

 In this case, the contract, interpreted as a whole, is clear and unambiguous. Under
Article 6 of the agreement, Netrana was required to "perform Services a minimum of twelve
(12) days per month during the Term of this Agreement." It does not state that Netrana is
guaranteed payment for twelve days worth of work regardless of whether it actually
performed the work. The amendment contains the following relevant sentence, "[Netrana]
will be compensated for hours actually worked." This sentence, according to Article 2 of
the amendment, "supercede[s] and replace[s] in their entirety any contradictory terms or
conditions contain in the Agreement." It is therefore clear that TXU was required to
compensate Netrana only for work that was actually performed. Accordingly, the trial court
did not err by granting TXU's motion for summary judgment and denying Netrana's. The
second issue is overruled.

III. Conclusion

 The judgment of the trial court is affirmed.

 

 ROGELIO VALDEZ

 Chief Justice

 


Memorandum Opinion delivered and filed

on this the 12th day of November, 2009. 
1. Netrana does not appeal the summary judgment on its fraudulent inducement, negligent
misrepresentation, fraud, false promise, and promissory estoppel claims. Therefore, we will not discuss these
issues. See Tex. R. App. P. 47.1. 
2. Even if Netrana's procedural arguments were not waived, they lack merit. On December 14, 2007,
TXU filed a written objection to Cioll's and Potter's affidavits on the ground that the affidavits constituted
inadmissible parol evidence. It reurged the objection at the summary judgment hearing on December 19. 
Citing McConnell v. Southside Independent School District, 858 S.W.2d 337, 343 n.7 (Tex. 1993), Netrana
contends that "the nonmovant must file its response or reply (including any objections to the movant's
evidence) 'not later than seven days prior to the day of [the] hearing.'" Netrana's reliance on McConnell is
misplaced because the McConnell court noted that "any exceptions filed by the movant [in a summary
judgment proceeding] to the non-movant's response must be filed and served not less than three days prior
to the hearing." Id. (citing Tex. R. Civ. P. 21). 


 With regard to Netrana's contention that a trial court's ruling on an objection to summary judgment
evidence be memorialized in writing, we have held that if the record indicates a ruling from the trial court,
either expressly or implicitly, then error is preserved. See Columbia Rio Grande Reg'l Hosp. v. Stover, 17
S.W.3d 387, 395-96 (Tex. App.-Corpus Christi 2000, no pet.) (citing Tex. R. App. P. 33.1(a)(2)(A)). In
considering TXU's written objections at the summary judgment hearing, the trial court ruled:


I do not think that the language of the contract is ambiguous. I think any information from the
two affiants in connection with plaintiff's proof is clearly parole [sic] evidence, as it attempts
to vary the terms of the contract, which I find not to be ambiguous.


Although the trial court's written judgment does not mention its sustaining TXU's objection, the trial court's
statement at the summary judgment hearing clearly does.