

# NUMBER 13-08-00264-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

NETRANA, L.L.C.,            Appellant,

v.

TXU BUSINESS SERVICES COMPANY,         Appellee.

### On appeal from the 298th District Court of Dallas County, Texas.

# MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Rodriguez and Garza
### Memorandum Opinion by Chief Justice Valdez

In five issues, which can be properly construed as two, appellant, Netrana, L.L.C. ("Netrana"), challenges a summary judgment granted in favor of appellee, TXU Business Services Company ("TXU"). We affirm.

## I. BACKGROUND

On June 2, 2006, Netrana, a consulting firm, contracted with TXU to provide project

management services.  The agreement provided the following:

## ARTICLE 6:  TERM OF AGREEMENT

The term during which [Netrana] will perform Services under this Agreement is for the period commencing June 6, 2002, and ending August 31, 2002, (the "Term") unless terminated earlier pursuant to the provisions of the Agreement.  The Term may be extended by a written amendment signed by both parties. . . .

[Netrana] will perform Services a minimum of twelve (12) days per month during the Term of this Agreement.

## ARTICLE 7:  COMPENSATION

[Netrana] will be entitled to compensation for authorized professional Services at the following rate and subject to the conditions contained in this Agreement.

$1200.00/day plus expenses

. . . .

## ARTICLE 31:  ENTIRETY OF AGREEMENT

This Agreement, together with any and all attachments or documents incorporated into it, constitutes the entire Agreement between the parties, and all prior negotiations, undertakings, understanding and agreements between the parties relating to the Services are merged into this Agreement.

The agreement was signed by Scott Potter, vice president of Netrana, and Debra Davis, senior contracts representative of TXU.  On September 1, 2002, the same party representatives signed an amendment which extended the agreement to December 31, 2002, and provided that, the agreement was to continue on a month-to-month basis thereafter.  The amendment included the following relevant provision:

## ARTICLE 2:  PURPOSE

This Amendment modifies, alters or changes specific terms and conditions of [the Agreement] that exist between the parties hereto.  The modified terms and conditions set out below supersede and replace in their entirety any contradictory terms or conditions contained in the Agreement.  Except as modified in the Amendment or previous amendments, the Agreement will

2

remain in full force and effect.

. . . .

ARTICLE 3:  MODIFICATIONS

_____. . . .

D.____Compensation: The language below supercedes and replaces the language contained in the original Agreement.

[Netrana] will be entitled to compensation for authorized Services at the following rate and subject to the conditions contained in this Agreement.  [Netrana] will be compensated for hours actually worked.

$1200.00/day plus expenses or $150.00/hr. if less than 1 day.

Additionally, the amendment provided that after December 31, 2002, TXU could terminate the agreement by providing two weeks written notice.

On December 13, 2004, TXU provided written notice to Netrana of its termination of the agreement.  Netrana then sued TXU for breach of contract, fraudulent inducement, "intentional and/or negligent misrepresentation," fraud, false promise, and promissory estoppel.  TXU answered with a general denial and asserted several affirmative defenses, including waiver of Netrana's rights under the agreement or amendment.

On August 31, 2007, TXU filed a hybrid motion for summary judgment.  As to Netrana's breach of contract claim, TXU asserted, as a traditional ground for summary judgment, that there was no breach of any written agreement, and it attached, *inter alia*, the agreement and its amendment.  As to Netrana's remaining claims, TXU asserted no-evidence grounds for summary judgment.  Netrana responded to the breach-of-contract ground by arguing that the agreement and amendment could be read as providing for a minimum payment of $14,400 per month, representing twelve days of work.  Netrana further argued that TXU "ratified" such an agreement by paying invoices that it submitted

3

until July 2004, and Netrana attached numerous invoices to its response. Additionally, Netrana contended that the affidavits of Potter and Nick Cioll, the TXU representative who negotiated the contract with Potter, created fact issues as to its remaining claims. Cioll's affidavit, which was attached to Netrana's response, provides in relevant part:

> It is true that Scott Potter, who represented NETRANA, LLP, informed me that Scott Potter refused to agree to the terms of the contract without a guaranteed minimum per month which was the reason TXU agreed to the following provisions:
>
> c.      At all relevant times it was understood and agreed that NETRANA[,] L.L.C. would be paid for a minimum of 12 days pursuant to the daily rate of $1,200.00, according to the "Article 6: Term of Agreement"
>
> d.      In exchange NETRANA, L.L.C. agreed to be ready, willing and able to perform professional services for a minimum of 12 days per month, TXU agreed to pay the sum of $1,200.00 per day for those 12 minimum days, for a minimum sum of $14,400 per month per month [sic] for training until the agreement was terminated pursuant to the agreement's written notice of termination.
>
> In addition, NETRANA, L.L.C., agreed to an hourly rate of $150 per hour for those days when less than a full day was worked. The hourly amount was intended to be in addition to the minimum per month.
>
> At that time, SCOTT POTTER informed TXU that unless NETRANA was guaranteed a per month minimum until the contract was terminated according to the terms, NETRANA could not afford to be available without any work so NETRANA would **not** agree to perform any of the services.

Additionally, Netrana filed a cross-motion for traditional summary judgment on its breach of contract claim. On December 14, 2007, TXU objected to the affidavits of Potter and Cioll on the ground that they constituted inadmissible parol evidence. The trial court granted TXU's traditional motion for summary judgment as to Netrana's breach of contract claim and its no-evidence motion for summary judgment on the remaining claims; it also denied Netrana's motion for summary judgment. This appeal ensued.

## II. DISCUSSION

4

In five issues, which we construe as two, Netrana contends that the trial court erred by granting summary judgment to TXU on Netrana's intentional misrepresentation and breach of contract claims.[1]

## A.    Standard of Review

The trial court granted TXU a no-evidence summary judgment on Netrana's intentional misrepresentation claim.  We review a trial court's ruling on a no-evidence motion for summary judgment for legal sufficiency.  *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 579-80 (Tex. 2006); *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750-51 (Tex. 2003).  Accordingly, we review the evidence in the light most favorable to the non-movant, disregarding all contrary evidence and inferences.  *City of Keller v. Wilson*, 168 S.W.3d 802, 825 (Tex. 2005) (noting that review of a "no-evidence" motion for summary judgment is effectively restricted to the evidence contrary to the motion); *Ortega v. City Nat'l Bank*, 97 S.W.3d 765, 772 (Tex. App.–Corpus Christi 2003, no pet.) (op. on rehr'g).  The burden of producing evidence is entirely on the non-movant; the movant has no burden to attach any evidence to the motion.  *See* TEX. R. CIV. P. 166a(i).  Summary judgment is improper if the non-movant produces evidence to raise a genuine issue of material fact.  *See id*.  To raise a genuine issue of material fact, the non-movant must produce a scintilla of probative evidence. *Ortega*, 97 S.W.3d at 772.  "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion of a fact.'"  *Id*. (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)).  Conversely, more than a scintilla exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions."

---

[1] Netrana does not appeal the summary judgment on its fraudulent inducement, negligent misrepresentation, fraud, false promise, and promissory estoppel claims.  Therefore, we will not discuss these issues. *See* TEX. R. APP. P. 47.1.

*Id*. (citing *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 25 (Tex. 1994)). In determining whether the non-movant has produced more than a scintilla of evidence, we review the evidence in the light most favorable to the non-movant, crediting such evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Tamez*, 206 S.W.3d at 582; *City of Keller*, 168 S.W.3d at 827.

Both parties moved for a traditional summary judgment on Netrana's breach of contract claim. We review the traditional summary judgment de novo. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 156 (Tex. 2004). The standards for reviewing a summary judgment are well established: (1) the movant must demonstrate that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law; (2) in deciding whether a disputed issue of material fact exists that would preclude summary judgment, we take all evidence favorable to the non-movant as true; and (3) we indulge every reasonable inference and resolve any doubts in favor of the non-movant. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985). When, as here, both parties file motions for traditional summary judgment and the court denies one and grants the other, we must review the summary-judgment evidence presented by both sides, decide all questions presented, and render the judgment that the trial court should have rendered. *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 356 (Tex. 2000).

**B.     Intentional Misrepresentation**

A claim of intentional misrepresentation has the same elements as a fraud claim. *See Smith v. Tilton*, 3 S.W.3d 77, 82 n.3 (Tex. App.–Dallas 1999, no pet.). The elements of a cause of action for fraud are: (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was

false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party suffered injury as a result. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001). A promise to do an act in the future constitutes fraud only when made with no intention of performing the promise at the time the promise was made. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex.1998). The mere failure to perform a contract is not evidence of fraud. *Id*. Fraudulent intent may be established by either direct or circumstantial evidence, and the subsequent failure to perform the promise, while not alone dispositive, can be considered with other factors to establish intent. *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434-35 (Tex. 1986).

In what we consider its first issue, Netrana contends that the trial court erred by granting TXU a no-evidence summary judgment on its intentional misrepresentation claim because Cioll's and Potter's affidavits created a fact issue as to whether a false representation was made by TXU representatives. Assuming that the affidavits were properly before the court and indulging every reasonable inference in Netrana's favor, Netrana does not mention any representations made by TXU representatives to Netrana regarding a guaranteed minimum monthly payment. All the affidavits state is that Potter wanted a guaranteed minimum monthly payment; they do not state that TXU made a representation that it would guarantee Netrana a minimum monthly payment. Additionally, subsections "c" and "d" of Cioll's affidavit, which Netrana claims were part of the agreement, appear nowhere else in the record. Thus, there is no evidence that TXU made any false representation. *See Formosa Plastics*, 960 S.W.2d at 47-48 (Tex.1998)

7

(providing that the mere failure to perform a contract is not evidence of fraud; rather, the plaintiff must present evidence that the defendant made representations with the intent to deceive and with no intention of performing as represented). Netrana's first issue is overruled.

## C. Breach of Contract

In order to succeed on a breach of contract claim, Netrana would have had to prove that: (1) a valid contract existed; (2) it performed or tendered performance; (3) TXU breached the contract; and (4) Netrana sustained damages as a result of the defendant's breach. *Adams v. H & H Meat Prods., Inc.*, 41 S.W.3d 762, 771 (Tex. App.–Corpus Christi 2001, no pet.). Netrana contends that it performed its obligations under the contract by "standing ready, willing, and able to perform professional services" and that TXU breached the guaranteed minimum payment provision of the contract. Thus, we look to the contract under our well recognized rules of contract construction to determine if a minimum payment provision existed in the amended agreement.

In construing a written contract, the primary concern is to ascertain and to give effect to the parties' intentions as expressed in the document. *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 311-12 (Tex. 2005). We consider the entire writing and attempt to harmonize and to give effect to all of the contract's provisions. *Id*. at 312. We construe contracts "'from a utilitarian standpoint bearing in mind the particular business activity sought to be served'" and "'will avoid when possible and proper a construction which is unreasonable, inequitable, and oppressive.'" *Id*. (quoting *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 530 (Tex. 1987)). "The language in a contract is to be given its plain grammatical meaning unless doing so would defeat the parties' intent." *Amtech Elevator Servs. Co. v. CSFB 1998-P1 Buffalo Speedway Office Ltd. P'ship*, 248 S.W.3d 373, 379

8

(Tex.App.–Houston [1st Dist.] 2007, no pet.).

If, after the pertinent rules of construction are applied, the contract can be given a definite or certain legal meaning, it is unambiguous, and we construe it as a matter of law. *Frost Nat'l Bank*, 165 S.W.3d at 312. However, if after such rules are applied, the meaning of the contract remains uncertain or is susceptible to more than one reasonable interpretation, it is ambiguous. *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995); *Coker v. Coker*, 650 S.W.2d 391, 393-94 (Tex. 1983). If a contract is ambiguous, the contract's interpretation becomes a fact issue to be resolved by deciding the parties' true intent, for which the fact finder may consider extraneous evidence of intent. *See Nat'l Union Fire Ins. Co.*, 907 S.W.2d at 520; *Coker*, 650 S.W.2d at 394-95. Whether a contract is ambiguous is a question of law to be determined "by looking at the contract as a whole in light of the circumstances present when the contract was entered." *Coker*, 650 S.W.2d at 394.

TXU moved for traditional summary judgment on the ground that the agreement and its amendment required Netrana to work in order to be paid. In its second issue, Netrana points to the affidavits of Cioll and Potter as support for the proposition that the intent of the parties was to provide for a minimum monthly payment. Netrana further contends that the trial court could not have granted TXU's objection to the affidavits of Cioll and Potter because the objection was untimely and there is no written order sustaining the objections.

Neither of Netrana's procedural arguments were presented to the trial court. Therefore, they are waived.[2] *See generally*, TEX. R. APP. P. 33.1. As to the merits of the

---

[2] Even if Netrana's procedural arguments were not waived, they lack merit. On December 14, 2007, TXU filed a written objection to Cioll's and Potter's affidavits on the ground that the affidavits constituted inadmissible parol evidence. It reurged the objection at the summary judgment hearing on December 19. Citing *McConnell v. Southside Independent School District*, 858 S.W.2d 337, 343 n.7 (Tex. 1993), Netrana contends that "the nonmovant must file its response or reply (including any objections to the movant's evidence) 'not later than seven days prior to the day of [the] hearing.'" Netrana's reliance on *McConnell* is misplaced because the *McConnell* court noted that "any exceptions filed by the movant [in a summary

9

traditional summary judgment, we note that the agreement contained an integration clause, providing that the written agreement constituted the entire agreement between the parties. The purpose of an integration clause is to invoke the parol evidence rule when appropriate. *Burleson State Bank v. Plunkett*, 27 S.W.3d 605, 615 (Tex. App.–Waco 2000, pet. denied). An unambiguous contract will be enforced as written, and parol evidence will not be received for the purpose of creating an ambiguity or to give the contract a meaning different from that which its language imparts. *See David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 450 (Tex. 2008).

In this case, the contract, interpreted as a whole, is clear and unambiguous. Under Article 6 of the agreement, Netrana was required to "perform Services a minimum of twelve (12) days per month during the Term of this Agreement." It does not state that Netrana is guaranteed payment for twelve days worth of work regardless of whether it actually performed the work. The amendment contains the following relevant sentence, "[Netrana] will be compensated for hours actually worked." This sentence, according to Article 2 of the amendment, "supercede[s] and replace[s] in their entirety any contradictory terms or conditions contain in the Agreement." It is therefore clear that TXU was required to compensate Netrana only for work that was actually performed. Accordingly, the trial court did not err by granting TXU's motion for summary judgment and denying Netrana's. The

---

judgment proceeding] to the non-movant's response must be filed and served not less than three days prior to the hearing." *Id*. (citing TEX. R. CIV. P. 21).

With regard to Netrana's contention that a trial court's ruling on an objection to summary judgment evidence be memorialized in writing, we have held that if the record indicates a ruling from the trial court, either expressly or implicitly, then error is preserved. *See Columbia Rio Grande Reg'l Hosp. v. Stover*, 17 S.W.3d 387, 395-96 (Tex. App.–Corpus Christi 2000, no pet.) (citing TEX. R. APP. P. 33.1(a)(2)(A)). In considering TXU's written objections at the summary judgment hearing, the trial court ruled:

> I do not think that the language of the contract is ambiguous. I think any information from the two affiants in connection with plaintiff's proof is clearly parole [sic] evidence, as it attempts to vary the terms of the contract, which I find not to be ambiguous.

Although the trial court's written judgment does not mention its sustaining TXU's objection, the trial court's statement at the summary judgment hearing clearly does.

second issue is overruled.

### III. CONCLUSION

The judgment of the trial court is affirmed.

_____


ROGELIO VALDEZ
Chief Justice

Memorandum Opinion delivered and filed
on this the 12th day of November, 2009.

11